The STATE of Ohio, Appellee,

v.

HYLTON, Appellant.

[Cite as *State v. Hylton* (1991), 75 Ohio App.3d 778.]

Court of Appeals of Ohio,
Gallia County.

No. 90CA13.

Decided Aug. 26, 1991.

*Brent A. Saunders,* Prosecuting Attorney, for appellee.

*Bennett & Wallen* and *James A. Bennett,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Common Pleas Court of Gallia County revoking the previously granted probation of Ray Hylton, defendant below and appellant herein. The following errors are assigned:

"1.  The court committed prejudicial error to the determinate [*sic*] of the defendant when it assumed the role of advocate for the state in the questioning of Sherri Hylton.

"2.  The court erred by allowing the state to impeach Sherri Hylton without adequate foundation.

"3.  The finding of fact made by the court that the defendant had committed domestic violence is against the manifest weight of the evidence.

"4. A finding that the defendant failed to promptly notify his probation officer at the time of arrest is against he [*sic*] manifest weight of the evidence."

The facts pertinent to this appeal are the following. Appellant was indicted and pleaded guilty to the offense of trafficking in drugs, *i.e.* marijuana, in violation of R.C. 2925.03(A)(1). Appellant was sentenced on May 17, 1990 to a term of twelve months and ordered to pay a fine of $1,500. Appellant thereafter commenced serving his sentence.

On June 22, 1990, appellant was granted shock probation upon conditions to be imposed by the court. These conditions included, *inter alia*, the following:

"Conditions of Probation

"1. You shall refrain from acts of physical aggression toward any person during the period of time that you are on probation.

"2. You shall refrain from violation of any law (federal, state and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer."

On July 23, 1990 a notification of alleged probation violations was served upon appellant by his probation officer reading *inter alia*, as follows:

"You are hereby advised that it is alleged you have violated the following conditions of your probation which was entered into on *June 25, 1990* for a period of *Two (2) years*.

"*CONDITION 1:* You shall refrain from acts of physical aggression toward any person during the period of time that you are on probation.

"TO–WIT: On or about July 21, 1990, you did fail to refrain from acts of physical aggression toward any person, to-wit: Sherri Hylton.

"*CONDITION 2:* You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.

"TO–WIT: On or about July 21, 1990, you did cause or attempt to cause physical harm to a family member, to-wit: Sherri Hylton, a violation of State law.

"TO–WIT: On or about July 21, 1990, you did fail to get in touch immediately with your probation officer upon your arrest by a law enforcement officer."

A probation revocation hearing was held on August 7, 1990 with appellant being represented by counsel. The evidence adduced tended to establish the following facts. On July 21, 1990 appellant and his wife, Sherri Hylton, were separated and a divorce action was pending. Appellant talked with his wife and requested her permission to remove his clothing from a trailer occupied

by his wife and she agreed. When he arrived around midnight a number of persons were at the trailer. Appellant had been drinking beer earlier at the trailer.

Appellant sought to remove bottled beer from the refrigerator stating it had been given to him by the person who had purchased it. One of the visitors at the trailer claimed ownership of the beer and a dispute arose culminating into a shoving match by various persons including appellant and his wife. While appellant's wife's testimony tended to minimize the participation of appellant, she testified that she had given a statement to a deputy sheriff the night of the incident, and later to appellant's probation officer who testified at the hearing, to the effect appellant had shoved her and injured her leg which resulted in an arrest of appellant for domestic violence. The charge was later dropped by appellant's wife.

Appellant was taken to jail and told the sheriff's deputies he was on probation. They stated they would advise his probation officer. Appellant did not request use of a telephone to notify his probation officer of his arrest and the probation officer learned of it on Monday morning.

At the conclusion of the hearing the court found from the evidence that appellant had violated the two conditions of his probation set forth above, revoked appellant's probation, and increased his sentence from twelve to eighteen months. This appeal followed.

■ We deem it helpful to initially note the nature of a probation revocation hearing. It is not a part of the formal criminal prosecution but is "an informal hearing structured to assure that the finding of a * * * [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the * * * [probationer's] behavior." *Morrissey v. Brewer* (1972), 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 496. See, also, *State v. Theisen* (1957), 167 Ohio St. 119, 4 O.O.2d 122, 146 N.E.2d 865. Further, probation revocation proceedings are specifically excluded from coverage under Evid.R. 101(C)(3).

The conduct of probation revocation proceedings must be in accord with due process requirements as declared by the United States Supreme Court. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. These include, as set out in *Gagnon*, " * * * (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probation or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * *; (e) a 'neutral and detached' hearing body * * *; and, (f) a written statement by the factfinders as to the evidence relied upon and reasons for revoking [probation or] parole. * * * " *Id.* at 786–787,

93 S.Ct. at 1761–1762, 36 L.Ed.2d at 664. Additionally Crim.R. 32.3(B) provides for the right to counsel retained or appointed.

Accordingly, appellant's complaint in the second assignment of error of a failure of the court to require foundational evidence under Evid.R. 607 which provides a limited right of impeachment of a witness called by a party by means of a prior inconsistent statement where there is surprise and affirmative damage is without merit. These latter requirements are to prevent placing before a trier of fact inadmissible hearsay.

While the evidence rules are inapplicable, hearsay can fall within the due process right to confront and cross-examine adverse witnesses. *Columbus v. Lacy* (1988), 46 Ohio App.3d 161, 546 N.E.2d 445. However, we perceive no due-process violation in the case *sub judice* where the witness was in court and subject to cross-examination. The second assignment of error is overruled.

Although not phrased in the terminology of the due process requirement of a "neutral and detached" hearing body, appellant's claim alleges a bias and prejudice on the part of the trial judge denying him a fair hearing. Primary reliance is placed upon the rather extensive questioning of appellant's wife by the court. We deem this insufficient to demonstrate a due process violation.

It was the duty of the court to initially determine if appellant's conduct violated the terms of his probation. Given the apparent difference in the testimony of appellant's wife at trial and that of her prior statements to the deputy sheriff and probation officer, we conclude such inquiry by the court was proper given the duty of the court to make a "true" evaluation of the probationer's actions. The trial court which placed a defendant on probation will be considered a neutral and detached body absent a demonstration of undue bias, hostility or absence of neutrality. *State v. Murr* (1987), 35 Ohio App.3d 159, 520 N.E.2d 264. No such demonstration was made. The first assignment of error is overruled.

The third and fourth assignments of error are based upon an assertion that it was against the manifest weight of the evidence to find appellant had violated the conditions of his probation. We disagree. While the burden on the state is not proof beyond a reasonable doubt, the quantum of evidence required to support a probation revocation must be substantial.

*State v. Mingua* (1974), 42 Ohio App.2d 35, 71 O.O.2d 234, 327 N.E.2d 791. That standard was met herein.

■ In light of the above, we would, in ordinary course, affirm the judgment. However, we notice, under Crim.R. 52(B), a plain error affecting a substantial right of appellant although it was not brought to the attention of the court below or this court. For authority of this court to utilize Crim.R. 52(B), see *State v. Eiding* (1978), 57 Ohio App.2d 111, 11 O.O.3d 113, 385 N.E.2d 1332. The utilization of the plain error rule should be limited in a case to prevent a miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

In *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 522 N.E.2d 524, the court at 169–170, 522 N.E.2d at 526, stated the following:

"App.R. 12 sets forth a court of appeals' review power. Although App.R. 12(A) provides that an appellate court need not pass on errors which were not assigned or argued, this power is discretionary. We have previously held that nothing prevents a court of appeals from passing upon an error which was neither briefed nor pointed out by a party. *Hungler v. Cincinnati* (1986), 25 Ohio St.3d 338, 25 OBR 392, 496 N.E.2d 912; *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400.

"However, *Willoughby Hills* also states that out of fairness to the parties, a court of appeals which contemplates a decision upon an issue not briefed before it should (as was done in that case) give the parties notice of its intention and an opportunity to brief the issue. *Id.* at 301, 67 O.O.2d at 360, 313 N.E.2d at 403, fn. 3." (Footnote deleted.)

■ The error we notice is with respect to the increase in sentence to eighteen months upon revocation of probation from the twelve month sentence imposed initially upon the plea of guilty. At that time appellant could have been sentenced under R.C. 2929.11(D)(2) for six, twelve or eighteen months. To determine if error intervened by increase in sentence, it is necessary to consider *State v. McMullen* (1983), 6 Ohio St.3d 244, 6 OBR 312, 452 N.E.2d 1292, and *State v. Draper* (1991), 60 Ohio St.3d 81, 573 N.E.2d 602.

Read together, these cases enunciate a rule that where a defendant is sentenced but probation is granted under R.C. 2929.51(A) and 2951.02 and no part of the sentence is served, the sentence may be increased pursuant to R.C. 2951.09 because as stated in *McMullen* at 246, 6 OBR at 314, 452 N.E.2d at 1294–1295:

"By placing a defendant on probation, the judge has afforded the benefit of a reduced sentence conditioned upon the defendant's efforts to reform. A

defendant has no expectation of finality in the original sentence when it is subject to his compliance with the terms of his probation. In the event of a violation of probation, the original sentence does not become final but is subject to modification wherein the standards of state law."

However, in *Draper* where a defendant had been sentenced to an indefinite sentence and began serving his sentence a different rule was applied. Shock probation was granted in *Draper* pursuant to R.C. 2929.51(B) and 2947.061. Subsequently, his probation was revoked and the minimum sentence previously imposed was increased. The court held in syllabus language the following:

"1. The authority conferred upon a trial court by R.C. 2951.09 to revoke the probation of an offender and imposed a greater sentence of incarceration is limited to probation granted pursuant to R.C. 2929.51(A) and 2951.02. *State v. McMullen* [1983], 6 Ohio St.3d 244, 6 OBR 312, 452 N.E.2d 1292, explained and distinguished.)

"2. While R.C. 2951.09 authorizes a trial court to revoke shock probation granted an offender pursuant to R.C. 2929.51(B) and 2947.061 for violation of the terms thereof, the court may not impose a term of incarceration in excess of the original sentence."

The *Draper* court reasoned, 60 Ohio St.3d at 83, 573 N.E.2d at 605, that in contrast to *McMullen:*

"[O]ne who has been granted probation pursuant to R.C. 2929.51(B) and 2947.061 not only has an expectation of finality in the original sentence, but has already undertaken to serve it. Under such circumstances, the imposition of a new and more severe sentence would constitute multiple punishments for the same offense. See *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897, paragraph two of the syllabus; *Brown v. Ohio* (1977), 432 U.S. 161 [97 S.Ct. 2221, 53 L.Ed.2d 187]; and *North Carolina v. Pearce* (1969), 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665]." (Footnote deleted.)

While ordinarily we would request briefs upon this issue, given the undisputed fact that appellant had commenced serving his sentence and was released upon shock probation, we consider further briefing unnecessary and hold the increase in the sentence of appellant was directly contrary to the holding in *Draper, supra,* and constituted prejudicial error.

Pursuant to the authority granted in App.R. 12(A), we proceed to enter the judgment the trial court should have entered by modifying the sentence of

eighteen months to twelve months and, as modified, affirm the judgment.[1]

*Judgment modified*
*and, as modified, affirmed.*

HARSHA and PETER B. ABELE, JJ., concur.

---

1. In fairness to the trial judge, we would note that the revocation of probation and increase in sentence occurred on August 7, 1990. At that time *McMullen, supra,* had been decided but *Draper, supra,* had not. That opinion was handed down in 1991. Understandably, the court below in all probability concluded *McMullen* was controlling, which is what a majority of this court essentially held in *State v. Mossman* (Jan. 9, 1991), Gallia App. No. 89CA3, unreported, 1991 WL 2209, but vacated on reconsideration after the decision in *Draper, supra.* In short, until *Draper* the law respecting an increase in sentence after a grant of shock probation was unsettled.