Defendant-Appellant Donald D. Hall appeals the trial court's revocation of his probation claiming a violation of his right to due process of law and alleging the trial court's finding that he violated the terms of his probation was not sufficiently supported by the evidence.
Hall was convicted of violating two Centerville income tax ordinances after he entered no contest pleas on July 9, 1997. Those convictions involved Hall's failure to file a Centerville income tax return for 1995 and for failing to pay taxes, penalties, or interest for that same year. The trial court subsequently ordered Hall to pay a fine of $750 plus court costs and serve ninety days in jail. Hall was also placed on unsupervised probation for two years with the conditions that he have no further violations of law, be of general good behavior, and file his 1995 tax returns with the Centerville Tax Department and pay any taxes, interest, and penalties due by August 22, 1997. Hall's ninety-day sentence was suspended, as was all but $100 of the fine imposed.
In spite of the court's order, Hall did not file his Centerville tax return until November 12, 1997. On December 10, the State filed a motion requesting that the court reimpose Hall's full sentence because he failed to provide "certain information" to the Centerville Income Tax Department, thereby violating the terms of his probation. Hall filed his response to the State's motion on December 16, 1997, and the next day the court issued an order for Hall to show cause why his previously suspended sentence should not be reimposed.
Hall filed an amended tax return on January 13, 1998; it differed from the November filing only by Hall's inclusion of a completed Schedule E, upon which Hall reported capital gains from the sale of several automobiles during 1995. A hearing on the State's motion was held on March 30, 1998, at which Hall was present and represented by counsel.
The transcript of the proceeding reveals that Hall engaged in more than five automobile transfers of title during 1995, creating a presumption that he was a dealer. R.C. §4517.02(A)(6). One of the sales concerned a 1989 Toyota that Hall had bought for $210 on August 23, 1995 and sold to Doris Jonas for $4,000 on September 30, 1995. The State's position was that Hall's November 1997 and January 1998 city tax returns were fraudulent because he failed to claim the profit from the transaction involving the Toyota as taxable income, as dealers are required to do. Hall, on the other hand, claimed he had made substantial repairs to the car before selling it, consequently making little profit from the sale. Hall stated the small profit from the sale of the Toyota was included on his city tax returns as a capital gain, as is proper when the seller is someone other than a dealer. Capital gains are not taxable in Centerville.
Hall claimed not to be a dealer, stating that the automobile sales in 1995 were precipitated by a letter from the city informing him he had too many cars at his residence and that he had to dispose of some of them. According to his testimony, he received the letter prior to the sale of the Toyota on September 30, 1995. Hall continued to buy and sell cars after that date, however, rarely keeping any of them more than a couple of weeks.
The State also questioned the legitimacy of Hall's claim that he rented his home on Tauber Drive in Centerville to various tenants throughout 1995. On the November 1997 and January 1998 city tax returns, Hall represented a net loss of $1,060 from the rental of his house. Hall claimed he lived with his mother in Kentucky from January to May of 1995, and that thereafter he resided primarily with his brother in Dayton, although he occasionally slept on a mattress in the garage of the Tauber Drive house. When questioned by the State, however, Hall admitted that his voter's registration lists the Tauber Drive address as his residence, as do all of the automobile title transfers in which he bought or sold cars during 1995. Hall also testified that he gives the Tauber Drive address when he is asked where he lives.
At the conclusion of the hearing, the trial judge ruled as follows:
 Gentlemen, the Court has carefully reviewed the tax returns, the copies of the titles issued to Mr. Hall, or title issued to Mr. Hall and the transfer to [Ms]. Jonas and frankly, they don't jibe at all. The dates, the amounts, and even if the Court were to accept Mr. Hall's argument that this is, in fact, a capital transaction rather than ordinary income, they would have had to have been reflected in the tax returns and they are not. Not only do the dates not match up, the year of the vehicle and the amounts involved do not add up. Which, to this Court, means that, in fact, the transfer or sale of this vehicle was not reported to the City of Centerville. Court would further note for the record that the Court had ordered as a condition of suspended sentence that the appropriate returns and taxes be paid by August 22nd and that was not accomplished by at least a month. Assuming even that the first return was correct, which it obviously wasn't, the second return in this Court's opinion was something that was thrown together at the last minute after Mr. Newberry filed his motion for revocation of probation. Court will, accordingly, find that Mr. Hall has violated the terms and conditions of suspended sentence.
March 30, 1998, Transcript at 38-39. Three weeks later, the trial court reimposed ten days of the original ninety-day sentence and the $650 fine which had been suspended. Hall now appeals in a timely manner the trial court's finding that he violated the terms of his probation, presenting us with two assignments of error. First, Hall claims the revocation hearing violated his right to due process of the law. Second, Hall argues the evidence supporting the trial court's decision was insufficient. We address each in turn.
I.
 The probation revocation hearing conducted in this case violated the Appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.
In his first assignment of error, Hall contends the probation revocation hearing violated his right to due process. He argues that under Morrissey v. Brewer (1972), 408 U.S. 471, and Gagnonv. Scarpelli (1973), 411 U.S. 778, he was entitled to both a preliminary revocation hearing and a final revocation hearing.[1]
He also claims he was denied due process of law by the lack of specificity in the State's motion and the trial court's order to show cause relating to the nature of his alleged probation violation. For the following reasons, we overrule Hall's first assignment of error.
We dispense with Hall's first argument, that claiming he should have been afforded a preliminary hearing and a final hearing, with little trouble. At no time prior to the instant appeal did Hall raise an objection to the lack of a preliminary hearing. Any error resulting from its omission, therefore, has been waived. State v. Delaney (1984), 11 Ohio St.3d 231, 233;State v. Miller (1975), 45 Ohio App.2d 301, 306; State v.Mingua (1974), 42 Ohio App.2d 35, 39; State v. Ingram (Oct. 21, 1994), Montgomery App. Nos. 14360, 14368, unreported.
Even if the issue had been preserved for appeal, however, we would find no prejudice to Hall occurred. The purpose of a preliminary revocation hearing is to avoid unjust incarceration prior to a finding that there is probable cause to believe that the probationer had violated the terms of his or her probation.Morrissey, supra at 485. The final hearing is for the purpose of determining whether probation revocation is warranted. Id.
at 487-88. The record before us indicates that Hall retained his liberty before, during, and after the proceedings in the trial court. There is no suggestion that he has, to date, spent any time whatsoever in jail as a result of his probation violation or the underlying offenses. Consequently, he suffered no prejudice from the omission of a preliminary revocation hearing. See Ingram, supra. Therefore, even if he had preserved the issue for appeal, we would find any error to be harmless.
Hall also argues he was denied due process of law by the lack of specificity in the State's motion seeking reinstatement of his sentence and the trial court's order to show cause why Hall's probation should not be revoked. The State's motion correctly states that, as a condition of his probation, Hall was ordered to "provide certain information to the city of Centerville Income Tax Department." In its order to show cause, the trial court briefly summarized Hall's underlying offenses and conditions of probation, then noted it had been advised that Hall had "failed to comply with the Centerville tax department." Hall complains that the State's and the trial court's choices of words provided inadequate notice to him of the nature of the alleged probation violation.
The United States Supreme Court has set forth the minimum requirements of due process that must be afforded a probationer or a parolee at the preliminary revocation hearing which include the right to "written notice of the claimed violations' of probation or parole." Morrissey, supra at 489; Gagnon, supra
at 786. The State's failure to provide written notice of the violation, however, does not mandate reversal of the trial court's decision unless the probationer shows the lack of notice prejudiced his or her ability to prepare a defense.State v. Newman (July 10, 1991), Summit App. No. 14984, unreported, citing State v. Logan (Nov. 24, 1987), Crawford App. No. 3-87-9, unreported.
Before evidence was presented at Hall's revocation hearing, he moved for dismissal of the State's motion on grounds that it failed to identify a violation of the conditions of Hall's probation. Hall's motion to dismiss was overruled and the hearing continued. Hall's entire argument on this issue is contained in one sentence: "This procedure violated Defendant's due process rights under Morrissey v. Brewer [sic] and Gagnonv. Scarpelli [sic] because Defendant was not served with notice of the alleged probation violation and the evidence against him was not disclosed prior to the hearing." Appellant's Brief at 4. Try as we may, we find no way to infuse into Hall's lean argument any intimation of prejudice resulting from the State's and the court's sparse description of his probation violation in their motion and order, respectively.
Nor does the record provide any evidence that Hall was prejudiced by the allegedly inadequate description of his probation violation. Hall testified in detail to the reason he sold the various cars in 1995, the work he performed on the Toyota eventually sold to Ms. Jonas, his living situation during 1995, the tenants to whom he rented the Tauber Drive house, and the income he derived from its rental. In addition, although it was neither entered into evidence nor included in the record before us, Hall testified that he came to the hearing prepared with an affidavit from the accountant he hired to prepare the November 1997 city tax return. In sum, even if we assume arguendo that the notice received by Hall was inadequate, his argument "raises a purely formal defect and fails to demonstrate any negative impact on his ability to prepare a defense to the charge." State v. Bleasdale (1990),69 Ohio App.3d 68, 70, citing Logan, supra.
Because Hall has waived any error from the State's failure to conduct a separate preliminary revocation hearing, and because he fails to demonstrate prejudice from either that omission or the allegedly insufficient notice of his probation violation, we overrule his first assignment of error.
II.
 The trial court's decision that Defendant violated the conditions of his probation is not supported by the evidence.
In his second assignment of error, Hall contends the judgment of the trial court finding he had violated the terms and conditions of his probation was unsupported by the evidence. Specifically, he claims the trial court's judgment was based on Hall's single error of failing to include the profit from the sale of the Toyota to Ms. Jonas on his November 1997 city tax return. Hall argues that the State failed to prove the profit from the transaction should have been reported as ordinary income, and that as a capital gain, the profit was not taxable. Hall misconstrues the relevant law, however.
We first note that the quantum of evidence needed to support revocation of probation is "substantial" rather than "beyond a reasonable doubt." State v. Hylton (1991), 75 Ohio App.3d 778,782-83 citing Mingua, supra at paragraph two of the syllabus;State v. Parsons (Nov. 15, 1996), Greene App. No. 96 CA 20, unreported.
In the present case, the trial court took judicial notice of the fact that where an individual engages in more than five motor vehicle title transfers in a year, he or she is presumed to be a dealer. See R.C. § 4517.02(A)(6). In Centerville, a dealer must report profits from his or her dealership as taxable income, whereas profit made from the sale of a car by those other than dealers is considered non-taxable capital gains. Hall argues that the State failed to prove he was a dealer. Evidence was introduced, however, showing Hall had transferred seven titles in 1995, giving rise to the presumption that he was a dealer of automobiles. It was then Hall's duty to present evidence to overcome the presumption. His statement that he only sold the cars in question because the city of Centerville sent him a letter telling him to do so conflicts with evidence that Hall continued to buy and sell cars even after receiving the letter. Hall's explanation, therefore, does little to rebut the presumption that he acted as a motor vehicle dealer in 1995.
Moreover, even if Hall had successfully rebutted the presumption, he nevertheless defied the court's order that he file his tax return with the city of Centerville by August 22, 1997. The uncontroverted evidence produced at the revocation hearing established that Hall did not file the ordered tax return until November 12, 1997. In doing so, Hall violated the terms of his probation.
Hall also argues that the city of Centerville should treat him in the same manner as any other taxpayer when an error on his tax return is suspected. He points to the fact that Centerville's procedure for dealing with taxpayer error begins with the city making an assessment based on what it believes is the correct treatment of the profit or loss involved. The taxpayer is entitled to an administrative review of the city's assessment, and if still unsatisfied, may pursue the matter into court. Hall claims the same procedure should be followed in his case regardless of his status as a probationer. We fail to see how this argument relates to whether the trial court's judgment is supported by sufficient evidence, but we address it nonetheless.
Suffice it to say that Hall's status distinguishes him from the ordinary taxpayer. It must be remembered that by failing to file a tax return in Centerville by August 22, 1997, Hall not only violated the city's tax ordinance, which requires tax returns to be filed by April 30 of the year following the tax year, he violated the court order setting forth the terms and conditions of his probation. Whereas an ordinary taxpayer's violation of Centerville's income tax ordinance would trigger the procedure to which Hall argues he is entitled, the trial court is not required to follow the same procedure when a probationer violates a court order containing the conditions under which the probationer's sentence will remain suspended. Hall was well aware that his failure to adhere to the terms of his probation by filing a Centerville tax return as ordered would, or at least could, result in a reinstatement of his sentence, whole or in part without the benefit of any administrative remedies that may be available to nonprobationers.
We conclude that the trial court's finding that Hall violated the terms and conditions of his probation is well supported by the evidence. Accordingly, we overrule Hall's second assignment of error.
Having found both of Hall's assigned errors to be without merit, we affirm the judgment of the trial court.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Robert N. Farquhar David E. Kuns Hon. Larry W. Moore
[1] It appears that although the State does not contest Hall's contention that he was denied a preliminary hearing, a fair argument could be made for the proposition that he was provided with both hearings as required by Morrissey and Gagnon. His first hearing on March 30, 1998, can be construed as his preliminary hearing where it was determined that Hall violated the conditions of his probation and where he had an opportunity to be heard, confront and cross-examine witnesses, present documentary evidence, etc. as mandated by Morrissey and Gagnon.
The second hearing on April 21, 1998, can be viewed as his final hearing, at which it was determined that revocation of probation was the appropriate sanction for Hall's violation. Here, too, Hall was permitted to present mitigating evidence in the nature of an explanation for his conduct and an update on his medical condition and pending doctors' appointments. Nevertheless, since this issue has not been presented to us for review, we continue on to consider those that have been so presented.