JOURNAL ENTRY AND OPINION
This is an appeal from a jury verdict and sentence following trial before Judge Nancy R. McDonnell. Joseph Beranek claims he should not have been convicted for three counts of felonious assault and one count of domestic violence. He asserts it was error to deny him the right to remove his lawyer, the jury was not given the proper instruction on the felonious assault charge, the jury was not given instruction on the lesser offense of aggravated assault and the State never proved his guilt beyond a reasonable doubt. We vacate the sentence, reverse the judgment and remand with instructions.
On November 6, 1998, Beranek, then 22 years old, his girlfriend, Betty Coleman, and her eighteen-month-old daughter, lived in the upper apartment of 2017 West 83rd Street in Cleveland. Larry and Donna Fine, the building owners, lived downstairs. Coleman's niece, Melissa Coleman, was staying overnight. The mayhem occurring the following morning resulted in a December 30, 1998 indictment against Beranek for three counts of felonious assault, two counts of aggravated burglary and two counts of domestic violence.
On March 2, 1999, prior to voir dire, Beranek's lawyer informed the judge that his client wished to discharge him.
 THE JUDGE: On behalf of the defense any pretrial motions?
 MR. FRYE [Beranek's attorney]: Just one, your Honor. My client would like to have me removed as his counsel.
 THE JUDGE: All right. We are here on the day of trial. I have no written motion. I see that you are appointed. Your motion is untimely and it will not be granted.
All right. Are we ready for the jury, gentlemen? After the jury was chosen, and prior to opening statements, the judge addressed the issue again:
 THE JUDGE: And early this morning we talked about you wanted to dismiss your lawyer. As you're aware this lawyer is assigned to you by the Court. Today is the trial date. No other attorney appeared on your behalf today. Am I correct to assume you have not contacted another lawyer?
BERANEK: Yes, your Honor.
 THE JUDGE: Just this morning you told Mr. Frye for the first time you didn't want to have him?
BERANEK: Yes, your Honor.
THE JUDGE: Okay. All right.
From the transcript we glean the following: Beranek and Coleman argued sometime in the early evening. Beranek then ended the relationship and moved out of the apartment, although he retained a key. Intoxicated and accompanied by his sister, Renee Beranek, he returned to the apartment at approximately 2:30 a.m. on November 7th and resumed his argument with Coleman. Although the witnesses testified inconsistently about what followed, it can at least be said that violence ensued, and that Beranek was responsible.
Coleman testified that both Beranek and his sister beat her savagely; that he hit her on the head with a telephone, pushed her face against a glass table, breaking it, choked her, threw her on the floor and began to kick and punch her, and stepped on her arm and wrist, breaking it in three places. Hospital records verified Coleman's broken wrist, a bruise on her neck and various scrapes.
The Fines woke up during this ruckus and went to investigate. In the midst of the beating, screaming, and confusion, Coleman's niece, with the baby, made her way down to the Fines' apartment. Beranek followed and met Fine on the downstairs porch. Fine had armed himself with a baseball bat prior to leaving his apartment, but testified when he recognized Beranek he put it down. Beranek then threw the baseball bat into the street and at some point punched Fine in the mouth, bloodying his lip, breaking his dentures, and loosening a tooth. During that time, Mrs. Fine came out on the porch, where she either attempted to help her husband or tried to keep Beranek and his sister from going inside the Fine apartment where, at some point, Coleman had joined her baby and niece seeking safety. Whatever her intentions, Mrs. Fine was pushed and fell through a glass storm door.
Mrs. Fine testified that she underwent surgery for a herniated disc on September 27, 1998, but had returned to her job before the altercation with Beranek.
 Q: What was your prognosis and progress as far as the initial back surgery, who [sic] were you doing at that point?
 A: I was doing pretty good. I went back to work cleaning offices. * * * Q: Since you were pushed back through the door what happened as far as are [sic] your back is concerned?
 A: I've been having all kinds of problems. I've been going to doctors, been going through therapy, they're talking about surgery, again, so I'm back to where I started from.
* * *
 Q: Have you had any long term — describe the long term effects of your injuries?
A: Long term?
Q: Yeah.
 A: Well, I have a lot of problems. I can't hardly walk sometimes. If I lay down on my bed I can't get out of the bed, I have to have help. I have a lot of numbness in my leg now and the disk that is dislocated, again, is pinching against a nerve in my back.
Q: And this is all as a result of the injuries —
A: Yes.
 Q: — this was not from the surgery from prior to the incident?
A: No.
Beranek's lawyer never cross-examined Mrs. Fine on her medical history, claimed injuries, subsequent treatment or prognosis nor did he request or obtain either her medical records or an independent medical examination. Neither the State nor Beranek offered any medical evidence on Mrs. Fine's then current condition. Only the Lakewood Hospital Emergency Room Records from November 7, 1998, were introduced to support the injuries and medical treatment of Donna Fine, Larry Fine, and Betty Coleman.
Beranek's lawyer cross-examined each of the State's five witnesses; the three victims, Coleman's niece and Cleveland Police Sergeant Patricia Kinsinger, but offered no witnesses in defense. Although his opening statement and closing argument were directed at convincing the jury that Beranek's actions toward Larry and Donna Fine were in self-defense or in response to provocation, his lawyer did not request jury instructions on self-defense, aggravated assault, R.C. 2903.12, or simple assault, R.C.2903.13.
 Beranek's lawyer did not question or argue to the jury the issue of whether Mr. Fine's injuries constituted serious physical harm, but did question in his opening statement and closing argument whether Mrs. Fine's back condition was caused by her fall or related instead to her recent back surgery. Although he never challenged Mrs. Fine's testimony about the injuries she claimed were caused by Beranek and did not attempt to discover or present evidence rebutting that testimony, he argued to the jury that the State failed to present sufficient evidence that Mrs. Fine suffered serious physical harm.
The jury found Beranek guilty of three counts of felonious assault and one count of domestic violence. Beranek waived pre-sentence investigation and the judge proceeded immediately to sentencing:
 THE JUDGE: All right. What would you like to say, Mr. Frye?
 MR. FRYE: I think the Court has heard what transpired in this incident. Mr. Beranek is on parole. He has been violated and will do approximately a year on that, your Honor, based on this incident.
 I would ask the Court to take that into consideration in imposing sentence.
* * *
 THE JUDGE: * * * Now for your sentencing. I note that you have a prior offense for which you are on parole. Clearly, Mr. Beranek, you have a criminal history of at least that. I don't know of anything else.
 These are offenses of violence. You did serious physical harm to the victims in this case in their homes, a place where they should be safe.
Count one, three years.
Count two, three years.
Count three, three years.
Count six, six months.
They are all to run consecutive.
All right. Thank you.
In her March 9, 1999 journal entry, however, the judge altered the sentence, ordering the six-month sentence to run concurrently instead of consecutively. Neither the transcript of sentencing nor the journal entry suggest that she considered the relevant factors and made the findings required before imposing consecutive sentences, nor did she record her reasons for imposing the sentences, which in the aggregate exceeded the maximum prison term Beranek could have received for a single felonious assault conviction.[1]
Beranek was appointed a different lawyer for his appeal, who raises four assignments of error. The first assignment states:
 I. THE TRIAL COURT FAILED TO CONDUCT A PROPER INQUIRY AS TO THE APPELLANT'S MOTION TO DISMISS HIS ATTORNEY.
Beranek alleges that the judge was required to investigate his reasons for wanting to discharge his trial counsel, even on the morning of trial, under the mandates of State v. Deal (1969), 17 Ohio St.2d 17,244 N.E.2d 742, which states in its syllabus:
 Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable.
It is clear the judge found Beranek's motion untimely because it was not a written motion stating his reasons for discharging his trial attorney and raised as an issue only on the day of trial. No inquiry was made into the nature of Beranek's complaint or concerns, nor did he or his lawyer offer to state those reasons. The facts of Deal, supra, discredit the notion that timeliness was a factor here because in that case the defendant did not seek to discharge his attorney until after the State had presented and rested its case. Deal, 17 Ohio St.2d at 17,244 N.E.2d at 742. Timeliness was rejected as a reason for the judge to refuse inquiry in State v. Prater (1990), 71 Ohio App.3d 78, 83,593 N.E.2d 44, 47. In Prater, the Tenth District Court of Appeals found the judge's timeliness concerns unpersuasive when the defendant had raised the issue at exactly the same times raised here. Id. at 79, 81,593 N.E.2d at 44-45.
One might attempt to distinguish Deal on the basis of the nature of the complaint raised, because the defendant in Deal made specific allegations of his lawyer's inadequacy. In this case, neither Beranek nor his attorney stated the nature of Beranek's complaint on the record. However, this case is similar to Prater, where the judge refused to hear the defendant's reasons in the first instance because he believed the motion untimely. Prater, 71 Ohio App.3d at 79-82, 593 N.E.2d at 44-46. We will not penalize Beranek for failing to press the issue before the judge when she made it clear that she would not consider Beranek's complaints and did not inquire into their nature.
We find it significant that the Ohio Supreme Court recently has cited Prater with approval on this issue. State v. Keith (1997),79 Ohio St.3d 514, 524, 684 N.E.2d 47, 59 (finding that Prater correctly required inquiry where defendant specifically informed the court that he did not want assigned counsel to represent him). In addition to approving the reasoning and result in Prater, Keith has the further effect of reinvigorating the thirty-year-old precedent of Deal.
Having determined that Deal remains the law of this State, and that it is applicable to the facts of this case, we must then determine Beranek's remedy. In both Deal and Prater, the case was remanded to the judge for the limited purpose of inquiring into the defendant's allegations, with instructions to re-enter the judgment of conviction if the allegations were unfounded. Deal, 17 Ohio St.2d at 20, 244 N.E.2d at 743-44; Prater,71 Ohio App.3d at 85-86, 593 N.E.2d at 48.
We note that in this case there are two elements to Beranek's claims; first, he must make allegations specific enough to justify further investigation; if he does so, the judge is then required to investigate those claims, although that investigation may be brief and minimal. Prater, 71 Ohio App.3d at 83, 593 N.E.2d at 47. The judge on remand must first allow Beranek to state his reasons for wanting to discharge his attorney but need not inquire further if his reasons are vague or general. Deal, 17 Ohio St.2d at 19, 244 N.E.2d at 742; State v. King (1995), 104 Ohio App.3d 434, 437, 662 N.E.2d 389, 391.
The purpose of the inquiry and investigation are to allow a defendant the opportunity to place his allegations on the record, and to show sufficient investigation into their merit to allow appellate review. Thus the complaining defendant is allowed the opportunity to place allegations and evidence of at least some issues of ineffective assistance of counsel on the record for review on direct appeal, rather than having those issues postponed for postconviction relief petitions, because they rely on evidence outside the record.
On remand, the judge should attempt to determine those issues for which Beranek sought to discharge his attorney initially; although in the aftermath of trial Beranek might assert numerous errors of his trial counsel, it is unlikely that he would foresee each error prior to trial. It need not become a hearing on postconviction relief, but at this point something more than a brief and minimal inquiry and investigation might be necessary to determine which of Beranek's claims are attributable to his attempt to discharge his attorney prior to trial and which became apparent only after the trial went forward. If the allegations are unfounded, judgment of conviction is to be re-entered.
Beranek's second and third assignments of error can be addressed together. These assignments state:
 II. THE TRIAL COURT FAILED TO PROVIDE THE JURY WITH A PROPER INSTRUCTION REGARDING FELONIOUS ASSAULT.
 III. THE TRIAL COURT FAILED TO INSTRUCT THE JURY OF THE LESSER OFFENSE OF AGGRAVATED ASSAULT.
Although his trial lawyer did not object to the jury instructions now being challenged, Beranek cites State v. Roberts (1996),109 Ohio App.3d 634, 672 N.E.2d 1053, in support of his argument, apparently claiming the judge failed to include a deadly weapon instruction and/or an absence of provocation instruction in describing the elements of felonious assault.[2] Roberts is inapplicable here, because an instruction concerning a deadly weapon only arises if the charge is based on R.C. 2903.11(A)(2). The charges in this case were based on R.C. 2903.11(A)(1), which requires only that a defendant cause serious physical harm, regardless of whether a weapon is used. Similarly, an absence of provocation instruction is warranted only if the aggravated assault instruction itself is warranted.
The offense of aggravated assault includes all the elements of felonious assault, with the mitigating factor of serious provocation brought on by sudden passion or sudden fit of rage. R.C. 2903.12. Where evidence of provocation is presented, an instruction on aggravated assault is warranted. State v. Mack (1998), 82 Ohio St.3d 198, 200,694 N.E.2d 1328, 1330-31. Here, however, there was no such evidence. Whether Fine came onto his porch with a baseball bat is not evidence that he attempted to hit or even threaten Beranek with it. Had there been evidence that Fine attempted to strike Beranek with the bat, Beranek would be required to present some evidence that the act was a provocation by Fine, rather than Fine's response to Beranek's initial aggression. The evidence showed that Beranek had been upstairs beating Coleman before he encountered Fine on the porch. Under these circumstances, Beranek cannot claim that Fine provoked him simply by holding a baseball bat. Beranek presented no evidence of provocation and an instruction on aggravated assault is not warranted. On the evidence presented,[3] we reject the second and third assignments of error.
The fourth assignment of error states:
 IV. THE STATE FAILED TO PROVE THE CHARGE OF FELONIOUS ASSAULT BEYOND A REASONABLE DOUBT.
The State correctly points out that this assignment of error appears directed at the sufficiency of the evidence. This court will reverse a guilty verdict if it is based on evidence upon which no reasonable trier of fact could convict. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
Beranek first claims that there was no evidence concerning whether Mrs. Fine was pushed by him or his sister. This assertion is meritless because Mrs. Fine testified that both Beranek and his sister participated in pushing her and he could be convicted of the same offense as an accomplice regardless of whether he or his sister was the principal offender. The jury was instructed as to such liability, and reasonably could convict Beranek either as a principal or as an accomplice.
Beranek next claims that the evidence was insufficient to show that Mrs. Fine's resultant medical complaints were the result of being pushed through the door because of her then recent back surgery. Mrs. Fine's testimony concerning the source of her injuries was never subject to cross-examination and was sufficient to allow a jury to infer a causal relationship with her fall. No evidence was offered to counter her assertions. The fourth assignment of error is overruled.
This appeal raises numerous issues that we cannot reach because they have not been assigned as errors and because their proper resolution requires the assistance of counsel and the adversary process to narrow, clarify, and illuminate the issues for this court. In appropriate cases, however, we retain the discretion to address plain error even when not assigned or argued by counsel. State v. 1981 Dodge Ram Van (1988),36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526. Although a court contemplating a decision on an unassigned error ordinarily should inform the parties and allow argument on the issue, doing so is not required where the error is so obvious that briefing and argument are unnecessary. Id.; State v. Hylton (1991), 75 Ohio App.3d 778, 784, 600 N.E.2d 821, 825; State v. Hall (July 30, 1992), Cuyahoga App. No. 60898, unreported. We find such obvious error in Beranek's sentencing.
The judge sentenced him to three consecutive three-year sentences but failed to make several specific findings, required by R.C. 2929.14(E)(4) before so doing. The judge first must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender[.] Next, she must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.] Finally, the court must find the existence of at least one of three factors, the first being that the defendant committed the offense while awaiting trial or sentencing on another matter, or was subject to parole, probation, or other sanctions from a prior offense. R.C. 2929.14(E)(4)(a).
The record shows that Beranek satisfied the final factor; his attorney admitted at sentencing that he was on parole for another offense but the judge made no other findings before imposing consecutive sentences. As already noted, the judge's sole comments were as follows:
 I note that you have a prior offense for which you are on parole. Clearly, Mr. Beranek, you have a criminal history of at least that. I don't know of anything else.
 These are offenses of violence. You did serious physical harm to the victims in this case in their homes, a place where they should be safe.
There is only one mandated finding in these five sentences: that Beranek was on parole at the time of the offenses.
Although the duty to make findings is less demanding than the duty to state reasons, the court that makes findings must note that it engaged in the analysis set forth in the applicable statute. State v. Edmonson (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134. The judge's brief comments show no analysis of the factors set forth in R.C.2929.14(E)(4). Nothing about offenses of violence committed in victims' homes leads to the conclusion that an offender is more likely to commit future crime. Beranek's potential to commit future crimes might have been supported by the fact that he was already on parole, but it would be impossible to reach the conclusion on that information alone. Nor do such statements show that the judge analyzed the issues and concluded that consecutive sentences were necessary to punish Beranek. She also had to find that the sentences were not disproportionate both to the seriousness of Beranek's conduct and to the danger he posed to the public. Her statements do not indicate that she considered these issues, nor do they give any clue as to how her comments might have related to those issues. As in Edmonson, the record here gives no indication that the judge considered, and then rejected, imposing a less severe sentence on Beranek based on the reasons set forth in R.C. 2929.14(E)(4). Id. at 328,715 N.E.2d at 135.
In addition to the findings required before imposing consecutive sentences, a judge is also required to state the reasons for imposing the consecutive sentences. R.C. 2929.19(B)(2)(c). Moreover, because Beranek's sentence is for nine years for three second-degree felonies, where the maximum term for each would be eight years, reasons for imposing the maximum — or rather more than the maximum — prison term must be stated. R.C. 2929.19(B)(2)(e).
The judge's comments here also fail to satisfy this requirement. While findings essentially set forth a judge's conclusions based on his or her consideration of the facts of a case and relevant statutory factors, a statement of reasons requires a judge to set forth the facts and circumstances considered and the importance attached to them, and the processes by which those facts and circumstances led to the conclusions reached.
The sentence also failed to advise Beranek that he was subject to a period of post-release control following his release from prison, R.C.2929.19(B)(3)(c); and that violating the terms of post-release control could result in further sanctions, including return to prison. R.C.2929.19(B)(3)(e). Woods v. Telb (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103; State v. Melton (May 4, 2000), Cuyahoga App. No. 75792, unreported.
Finally, we note that R.C. 2953.08(G)(1)(a) allows this court to review and alter a sentence that is not supported by the record. Beranek's counsel did not raise this issue on appeal, and because the existence of error is not obvious, this issue should not be decided without a proper record and argument of the parties. This sentence, however, does not seem supported by the record before this Court.
Even though Beranek's trial attorney did not dispute the seriousness of the injuries to Fines, we question whether Beranek's injuries to the Fines were the equal of those sustained by Coleman. Although the issue was never raised before the jury, the trial court, or on appeal, whether Mr. Fine's punch in the mouth, fat lip, loose tooth and cracked dentures legally constituted serious physical harm is questionable at best. The cracked dentures do not constitute physical harm, only property damage, and this court is unaware of any decision finding that a fat lip and a single loose tooth, without more, are sufficient to constitute serious physical harm under R.C. 2903.08. Similarly, even though the evidence was sufficient to find Beranek guilty of felonious assault with respect to Mrs. Fine's injuries, the evidence of the seriousness of her injuries and their causal relationship was not strong.[4]
In assessing the seriousness of an offender's conduct, a judge should take into account grounds that mitigate an offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(C)(4). Although R.C. 2929.12 does not directly relate to imposition of consecutive sentences, its guidelines can and should be followed, when applicable, in analyzing the findings necessary under 2929.14(E)(4). Without minimizing the injuries sustained by the Fines, the judge had a duty to attempt to impose a sentence for those injuries that would be consistent with sentences imposed for similar crimes.
We remand this case for proceedings consistent with this opinion. The judge should first inquire into Beranek's reasons for discharging his attorney and, if it is determined that Beranek's conviction should be upheld, judgment of conviction may be reentered and sentences in compliance with R.C. 2929.11 through 2929.19 imposed.
It is ordered that the appellant recover from appellee his costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., CONCURRING SEPARATELY;
JAMES M. PORTER, J., DISSENTING AND CONCURRING IN PART (SEE DISSENTING AND CONCURRING OPINION ATTACHED).
[1] The journal entry also contains a rote recitation of statements, none of which occurred, of course, that took place during the sentencing: The court finds, based upon a consideration of factors that prison is consistent with the purposes of R.C. 2929.11. * * * The sentence includes any extensions provided by law. * * * Defendant advised of appeal rights. * * *
[2] We note that quotations from West Publishing headnotes are not persuasive authority, and constitute no part of the opinion of this or any other Ohio court, much less the holding of such court. The headnotes are provided by the publisher as a means to aid legal research; they do not state the law.
[3] If Beranek claims that he could have presented credible evidence of provocation but was prevented from doing so by his lawyer, such claims can be investigated on remand.
[4] Expert testimony would be required.