[Cite as *State v. Reese*, 2020-Ohio-4747.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff-Appellee,          :

                            No. 109055

      v.                          :

CARL REESE,                             :

      Defendant-Appellant.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 1, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-633131-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney, *for appellee.*

Prugh Law, L.L.C., and Leigh S. Prugh, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Carl Reese pled guilty to a second-degree felony for robbery. When he violated his community control sanctions, the trial court sentenced him to a prison

term of two years.  Reese appeals from the judgment sentencing him to prison.  On appeal, he raises the following assignments of error for our review:

> I.  The trial court denied Mr. Reese procedural due process of law in its conduct of the June 6, 2019 probation violation hearing.
>
> II.  Mr. Reese's trial counsel provided ineffective assistance.
>
> III.  The trial court erred in determining that Mr. Reese violated the terms of his probation as such finding was against the manifest weight of the evidence.

**{¶ 2}**  After a review of the record and applicable law, we find no merit to Reese's appeal and affirm the trial court's judgment.

**Substantive and Procedural Facts**

**{¶ 3}**  Reese was an aggressive panhandler whose presence was well known in the Case Western Reserve University ("Case Western") area.  According to the state's account of the incident, Reese was dissatisfied with the one dollar the victim gave him.  When the victim refused to give him more, he took the victim down on the ground and punched him in the face and on the left side of his torso.  Reese then robbed the victim of his wallet and fled.  A good Samaritan came to the victim's aid and later helped the Case Western police identify Reese as the perpetrator of the robbery.

**{¶ 4}**  Under a plea agreement, Reese pleaded guilty to robbery, a second-degree felony.  On February 20, 2019, the trial court held a sentencing hearing.  The prosecutor described the robbery incident; Reese's counsel acknowledged Reese panhandled in an aggressive manner but stated that his aggressiveness may be caused by his mental health issues and drug use.

**{¶ 5}** The court ordered Reese not to panhandle in the Case Western University area in the future and imposed a two-year community control sanction. Reese was ordered to stay at a community based correctional facility ("CBCF") under the supervision of the adult probation department mental health developmental disabilities unit. The court warned him that he faced a prison term if he were to violate the terms and conditions of the community control sanctions.

**{¶ 6}** A month later, on March 21, 2019, Reese was before the trial court for a probation violation hearing. Officer Polito, the probation officer, reported to the trial court that on February 26, 2019, Reese was transported from the county jail to the CBCF. On March 10, 2019, he was transported to St. Vincent Charity Medical Center by the police department after telling the staff at the CBCF that he was experiencing suicidal thoughts. Reese was discharged a few hours later from the hospital and returned to the CBCF. The next day, he told a caseworker at the CBCF that the hospital did not help him and he wanted to go to the ER. He was then taken to the crisis counselor's office. He remained at the office for two and one-half hours; while there, he talked to a counselor at Mobile Crisis over the phone and Mobile Crisis determined that another hospital visit was not required. When the crisis counselor had to meet another client, Reese "got extremely angry and started swearing up and down the hallway." (Tr. 40.) He also swore at the other client who was meeting with the crisis counselor. Reese walked up and down the hallway and refused to follow the directives from the staff. Because of his unruly behaviors, he was terminated from the CBCF and transported to the county jail by the sheriffs.

{¶ 7} Regarding the incident, Reese's counsel explained that Reese desired to be at a treatment facility rather than CBCF. Reese himself stated he had a mental breakdown the day before the March 11, 2019 incident. He explained that because there were no beds available, the doctor adjusted his medication, released him back to the CBCF, and told him to talk to a social worker there about his situation. He admitted he behaved disruptively on March 11, 2019, when the staff did not return him to the hospital as he requested. After the hearing, the trial court imposed a jail sanction and continued the probation violation hearing to April 18, 2019.

{¶ 8} At the hearing on April 18, 2019, Officer Polito recommended that Reese be remanded for inpatient drug treatment, while Reese's counsel requested that Reese be released from the county jail to receive outpatient treatment. The trial court found Reese to be in violation of his community control sanctions but ordered him to continue his community control sanctions by completing inpatient treatment. Reese was again advised that he would face a prison term if he were to violate his community control sanctions.

{¶ 9} On May 9, 2019, Reese was transported to "Matt Talbot" for inpatient treatment. On May 20, 2019, Officer Polito spoke with Reese's counselor and learned he was doing well. However, later that evening, Reese again behaved disruptively. His disruptive behaviors led to another probation violation hearing on June 6, 2019.

{¶ 10} At the June 6, 2019 hearing, Officer Polito reported that in the evening of May 20, 2019, Reese requested to go the hospital and was transported to

Parma Hospital. He was seen by a doctor but was not admitted to the hospital. While there, Reese yelled at the hospital staff and other patients. His case manager, Tonya Caraballa, met with him at the hospital. Because Reese did not want to return to Matt Talbot, the Sheriff's Apprehension Unit was sent to the hospital to transport him to the county jail. Officer Polito stated that Reese exhibited the same disruptive behaviors toward the staff at Parma Hospital as he did at the CBCF. Officer Polito stated that, as a probation officer, she had exhausted all available resources and, as a result, would not be making any recommendation to the court.

{¶ 11} Reese's counsel stated that Reese had intended to complete the program at Matt Talbot; Reese did not recall anyone asking him if he wanted to return to Matt Talbot. Counsel stressed that Reese's unruly behaviors were caused by his mental health issues. In response to counsel's representation that Reese "had every intention of completing [the] Matt Talbot program" (tr. 53), Officer Polito stated that Reese's case manager, Tonya Caraballa, met Reese at Parma Hospital to determine whether Reese wanted to return to Matt Talbot. Reese told Caraballa he was not going back. While Reese denied he told Caraballa he was not going back to Matt Talbot, his own account of the event was incoherent.[1]

---

[1] Reese stated the following:

But Tonya [Caraballa] did come [to Parma Hospital], and she said, I'm confused, and I said, Yes, and then I said, Tonya, you make up your mind for me, because when we had the assessment over the TV screen at Matt Talbot, I mean, at University, they had people asking questions on the screen. I think they asked me do you feel safe going back to where you you're at. I said, yes.

{¶ 12} The trial court noted that it had tried placing Reese at the CBCF and the inpatient treatment as part of his community control sanctions and neither worked out. Finding community control sanctions no longer adequate to protect the public, the court terminated Reese's community control sanctions and imposed a prison term of two years for his second-degree felony offense of robbery, but granted him jail time credit for 241 days. Reese now appeals from the court's judgment.

## Purported Hearsay at June 6, 2019 Probation Violation Hearing

{¶ 13} Under the first assignment of error, Reese argues his due process rights were violated at the June 6, 2019 probation violation hearing when the trial court admitted hearsay testimony from his probation officer who stated that while at the Parma Hospital, Reese told his case manager that he was not returning to the inpatient treatment facility. Under the second assignment of error, he claims his counsel was ineffective in failing to object to the hearsay evidence. The state contends that the Rules of Evidence do not apply to a community-control-revocation hearing, and even if they were applicable, Reese's own statement was not hearsay because it constituted a party admission under Evid.R. 801(D)(2)(d).

---

No staff member really came to me and asked me did you want to go home except Miss Tonya.

She basically walked out from me. I asking the suggestion, to letting me to back there, and I'm thinking — I walked out, and * * *.

(Tr. 58.)

{¶ 14} A probation revocation hearing is not a formal criminal trial but is "'an informal hearing structured to assure that the finding of a * * * [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the * * * [probationer's] behavior.'" *State v. Hylton*, 75 Ohio App.3d 778, 781, 600 N.E.2d 821 (4th Dist.1991), quoting *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

{¶ 15} A defendant's due process rights that must be observed in a probation revocation hearing are:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * *; (e) a 'neutral and detached' hearing body * * *; and, (f) a written statement by the factfinders as to the evidence relied upon and reasons for revoking [probation or] parole. * * *."

*Id.*, quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *See also State v. Lofton*, 8th Dist. Cuyahoga No. 89572, 2008-Ohio-3015.

{¶ 16} Here, Reese only claims the fourth requirement set forth in *Gagnon* was not complied with. He argues that his right to confrontation was violated when the probation officer provided inadmissible hearsay when she stated that while at the hospital, Reese told his case manager that he was not returning to the inpatient program.

{¶ 17} Evid.R. 101(C)(3) expressly provides that the rules of evidence do not apply to proceedings revoking probation. "Probation-revocation hearings are not subject to the rules of evidence and thus allow for the admission of [otherwise

inadmissible] evidence." *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 21 (6th Dist.). "The rules of evidence, including hearsay rules, are expressly inapplicable to a revocation hearing." *State v. Gullet*, 5th Dist. Muskingum No. CT2006-0010, 2006-Ohio-6564, ¶ 27, citing Evid.R. 101(C)(3). "The rationale for this exception is that a trial court should be able to consider any reliable and relevant evidence indicating whether the probationer has violated the terms of probation, since a probation or community control revocation hearing is an informal proceeding, not a criminal trial." *Id.,* citing *Columbus v. Bickel*, 77 Ohio App.3d 26, 36, 601 N.E.2d 61 (10th Dist.1991). *See also e.g.*, *State v. Newsome*, 4th Dist. Hocking No. 17CA2, 2017-Ohio-7488, ¶ 21, and *State v. Nagle*, 11th Dist. Lake No. 99-L-089, 2000 Ohio App. LEXIS 2658 (June 16, 2000). As such, we need not address whether the probation officer's statement violated the prohibition against hearsay testimony under the rules of evidence. The trial court heard from both the probation officer and Reese himself regarding the circumstances surrounding Reese's refusal to return to the inpatient treatment facility, and it should be able to consider all evidence it deemed reliable and relevant.

{¶ 18} We are aware that, despite the inapplicability of the rules of evidence, some courts have reasoned that the admission of hearsay evidence at a probation revocation hearing can compromise a defendant's due process right to confront adverse witnesses, as preserved by the fourth requirement of *Gagnon,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656. *Ohly*, *supra*, at ¶ 21. Accordingly, the introduction of hearsay evidence into a probation revocation hearing is deemed

reversible error "when that evidence is the only evidence presented and is crucial to a determination of a probation violation." *Id.*, citing *State v. Jones*, 8th Dist. Cuyahoga No. 58423, 1991 Ohio App. LEXIS 2098, 14 (May 9, 1991). *See also Newsome* at ¶ 22; *State v. McCants*, 1st Dist. Hamilton No. C-120725, 2013-Ohio-2646, ¶ 14 ("Although the rules of evidence are inapplicable to revocation hearings, the admission of hearsay may implicate the defendant's right to confront and cross-examine witnesses.").

{¶ 19} Here, even if we were to assume that the probation officer's statement that Reese told his case manager he was not returning to the inpatient treatment facility involved hearsay, this was not the only evidence supporting Reese's failure to complete the ordered inpatient treatment: Reese behaved disruptively while at the Parma Hospital, as he did only five weeks prior at the CBCF, and the Sheriff's Apprehension Unit had to be sent to remove him from the hospital. Given all the evidence, there was no violation of Reese's right to confrontation pursuant to *Gagnon,* even if the hearsay rule were implicated in the probation officer's statement. The trial court did not err in denying Reese a right to confrontation, and his trial counsel did not provide ineffective assistance in failing to object to the purported hearsay statement. The first and second assignments of error are without merit.

**<u>Substantial Evidence Presented for Violation of Community Control</u>**

{¶ 20} Under the third assignment of error, Reese argues the trial court's determination that he violated the terms of his probation was against the manifest weight of the evidence.

{¶ 21} A community control revocation hearing is not a criminal trial, and therefore, the state is not required to establish a violation of the terms of community control beyond a reasonable doubt. *State v. Lenard*, 8th Dist. Cuyahoga No. 93373, 2010-Ohio-81, ¶ 14, citing *State v. Hayes*, 8th Dist. Cuyahoga No. 87642, 2006-Ohio-5924, ¶ 11. Rather, the quantum of evidence necessary to establish a violation and to revoke a community control sanction is "substantial" evidence. *Id.*, citing *Hylton*, 75 Ohio App.3d 778, 600 N.E.2d 821, at 782. Moreover, a trial court's decision finding a violation of community control will not be disturbed on appeal absent an abuse of discretion. *Id.*, citing *Hayes* at ¶ 11.

{¶ 22} Here, the record contains substantial evidence showing Reese failed to complete the inpatient-drug-treatment program ordered as part of his community control sanctions. While Reese claimed there was a miscommunication and provided his own account of the event on May 20, 2019, the trial court considered the credibility of the witnesses and determined that Reese violated his community control sanctions. We find no abuse of discretion in the trial court's determination.

{¶ 23} Under the third assignment of error, Reese also claims the trial court did not adequately consider whether his actions were borne from his mental illness.

This court has stated that "community control may be revoked where, because of mental illness, a defendant is unable to comply with community control sanctions." *State v. Harian*, 8th Dist. Cuyahoga No. 97269, 2012-Ohio-2492, ¶ 28, citing *State v. Norris*, 5th Dist. Stark No. 2010CA0070, 2010-Ohio-6007, ¶ 20-21. Furthermore, the courts have held that insanity is not a defense to community control violations, but only a mitigating factor. *Id.* at ¶ 30. The record reflects the trial court took into account Reese's drug and mental health issues when it placed him in CBCF with treatment conditions and subsequently in the inpatient treatment program. Before revoking Reese's community control, the trial court expressed its frustration over Reese's inability to complete the community control sanctions imposed to accommodate his drug and mental health issues. Given the record, we find Reese's claim to be without merit. The third assignment of error is overruled.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR