[Cite as *State v. Michael*, 2014-Ohio-754.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  7-13-05

    v.

ROGER W. MICHAEL,               O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Napoleon Municipal Court
Trial Court No. CRB1200299

**Judgment Affirmed**

**Date of Decision:   March 3, 2014**


**APPEARANCES:**

    *Alan J. Lehenbauer* **for Appellant**

    *James D. Rode*  **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Roger W. Michael brings this appeal from the judgment of the Napoleon Municipal Court in Henry County, Ohio, finding him in violation of the terms of his suspended sentence and ordering him into custody to serve his previously suspended sentence. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On September 11, 2012, Michael pled guilty to aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree. (R. at 14.) The trial court accepted his plea and, on the same day, imposed upon Michael a sentence of ninety days in the Corrections Center of Northwest Ohio, with credit for one day served. (*Id.*) The remaining eighty-nine days were suspended on the following conditions: (1) No violations of Menacing or Domestic Violence for a two-year period; (2) Compliance with the terms of the CPO[1]; and (3) Attendance at Batterer's Treatment Program[2] ("Program") in Henry County at the direction of the Probation Officer. (*Id.*) This last condition is at issue here.

{¶3} The record shows that Michael made a contact with the Center for Child and Family Advocacy ("Center"), on or before September 18, 2012, in order to set up a diagnostic assessment. (R. at 15.) He was admitted to the Program on

---

[1] The Judgment Entry does not explain what the terms of the CPO (protection order) were and they are not at issue here.

[2] There are several different labels for the Program throughout the record, including "Batterer's Treatment Program" (R. at 14), "Batterer's Intervention Program" (R. at 17), and "BIP treatment" (R. at 30). For the ease of discussion, we will use "Program" in this opinion to refer to the court-prescribed treatment.

September 26, 2012, and at some point, participated in the diagnostic assessment. (R. at 20.) Yet, he did not return to the Center after his assessment or contact the Center to schedule his first treatment session. (R. at 17, 24.) His last contact with the Center was on October 10, 2012. (*Id.*) Therefore, on January 9, 2013, a document was filed with the trial court, stating that Michael's case would be closed due to his failure to contact the Center. (R. at 17.) The document included the following language, "Recommendations remain that Roger participate in the Batterer's Intervention Program and have a psychological evaluation." (*Id.*) Michael's personal issues were marked as "Unknown." (*Id.*)

{¶4} On January 15, 2013, the State filed its "Motion for to Show Cause," moving "for an order of contempt after requiring the Defendant to Show Cause for failing to comply with the conditions of his suspended sentence and then to impose time previously suspended in this matter." (R. at 18.) The State maintained that the basis for its motion was Michael's failure to contact the Center for his psychological evaluation and his failure to participate in the Program. (*Id.*)

{¶5} On February 8, 2013, a Transfer/Discharge Summary was filed with the trial court, stating that Michael had been discharged from the Program as of January 28, 2013. (R. at 20.) The reason for his discharge was failure to return to the Program after his assessment. (*Id.*) The document reported that Michael claimed to be "top notch, mentally, math, reading * * *." (*Id.*) There was a comment that Michael was able to meet his needs and ask for assistance when

needed but he preferred not to attend the treatment. (*Id.*) The document also stated that Michael could contact the agency to participate in the Program when he so desired. (*Id.*)

{¶6} On March 12, 2013, a Client Readmission Form from the Center was filed with the trial court, stating that Michael "was, again, court-ordered to follow through with [the] recommendations." (R. at 24.) On the same date, a 30-Day Evaluation form prepared by the Center's clinician was filed, reporting that Michael claimed that he had been placed in the program due to a "clerical error." (R. at 25.) The evaluation further detailed that Michael "present[ed] as verbally hostile and appear[ed] highly agitated, resistant to treatment and report[ed] that his PO Bob Bogert [would] excuse him from group." (*Id.*) The form concluded with recommendation of probation, termination from program, and "possible reevaluation/SEARCH program." (*Id.*) Another 30-day evaluation form was filed on April 11, 2013, indicating that Michael attended the program every week between March 7 and March 28; yet, he was "highly resistant to treatment, combative, and unwilling to participate in any meaningful way." (R. at 27.) Termination from the program was recommended. (*Id.*) Michael missed his appointment on April 4, 2013, and a report was filed with the court advising that he would be unsuccessfully discharged from the Program. (R. at 28.) The final discharge summary stated,

> Roger did not attempt to engage in the BIP treatment in a meaningful way. Roger was not willing to address his treatment goals because he is resistant to the information and interventions. Roger is obstructive to the group process and failed to make any effort to participate appropriately.

(R. at 30.)

{¶7} On April 9, 2013, Michael requested a hearing on the State's motion that was filed back in January.[3] (R. at 26.) The hearing took place on May 21, 2013. (*See* Tr. of Proceedings, May 21, 2013.) At the hearing, the trial court informed the parties that they were being heard "on a motion to show cause that was filed with the Court on January 15th, 2013." (*Id*. at 3.)

{¶8} One witness testified at the hearing, Ms. Beth A. Glass, the Clinical Services Director at the Center, who supervises the Program. (*Id*. at 3-4.) She testified that the Center's clinician performed a diagnostic assessment on Michael and made two recommendations: first, that Michael participate in the Program, and second, that he participate in a psychological evaluation. (*Id.* at 5.) Ms. Glass testified that although Michael did not return to the Program after the evaluation, he was not discharged immediately. (*Id.*) Eventually, however, the Center closed his case and sent him a letter. (*Id.*) Ms. Glass testified that Michael called her after receiving the letter and "was very angry about his case being closed." (*Id.* at

---

[3] The motion filed on April 9, 2013, actually requested several things. The check-applicable-box form reads, "Defendant in the above-captioned case * * * requests this Court to Continue[,] Set this case for Trial * * *. FOR CAUSE, the requesting party asserts [(handwritten:)] set for hearing on motion." (R. at 26.) The trial court ordered the case to be "Set For trial" on May 21, 2013, and the handwritten note next to a scheduled date and time was, "full Hrg." (*Id.*)

6.) When Ms. Glass explained to Michael that the case was closed due to his failure to attend the Program or contact the Center, Michael responded that there was no reason for him to go to the group because his ex-wife had been dishonest. (*Id.*) Ms. Glass informed Michael that he should contact the court and his probation officer about these issues. (*Id.*) Testifying about that phone encounter, Ms. Glass commented that Michael was yelling at her and she eventually hung up the phone. (*Id.* at 7.) She relayed the contents of that conversation to Michael's probation officer. (*Id.* at 7.)

{¶9} Following the conversation with Michael's probation officer, Ms. Glass agreed to readmit Michael to the program. (*Id.*) Michael began participating in the Program on February 28, 2013. (*Id.*) At the first meeting, Michael stated, "I know what you women are trying to run here and it's not going to work." (*Id.*) He further said that the reason he had to come to the Center was a clerical error and that he actually had been cleared of all the charges because his wife had lied and "this was all a big mistake." (*Id.* at 7-8.) During this meeting, his voice escalated, he stood out of his chair, and he had to be confronted by other group members. (*Id.* at 8.) Following that event, Ms. Glass called Michael's probation officer to express her concerns about the appropriateness of the program for Michael, although she was willing to continue to work with him. (*Id.*)

{¶10} Ms. Glass testified that Michael continued to attend the program until March 28, 2013, but he was eventually discharged. (*Id.*) She admitted that the

Center has an appeal process in place and Michael was informed that he could appeal his discharge. (*Id.* at 10.) There is no indication in the record whether Michael ever attempted to take advantage of this option and return to the program. When Ms. Glass was asked whether there could be other causes as to why Michael was unable to complete the Program, she stated, "Possibly," but she added that the quotes in their progress notes indicate that his failure to attend was "fairly willful." (*Id.* at 11.) As to why Michael's psychological evaluation was not performed in spite of it being recommended, Ms. Glass claimed that they were unable to make arrangements for psychological assessment when Michael did not contact them after his initial evaluation. (*Id.*) She admitted that they did not schedule him for psychological assessment after he had returned to the Program. (*Id.* at 12.)

{¶11} No other testimony or evidence was introduced at the hearing. In closing remarks, Michael's counsel stated,

> it appears that based on the assessment that was given, there are some other issues that Mr. Michael needs to deal with properly first before being able to successfully complete a program of this type. * * * And we would just ask the Court to give him an opportunity to try to at least, one, complete the psychological portion and, you know, get some help there as to deal with his issues he may have.

(*Id.* at 13.)

{¶12} At the end of the hearing, the trial court announced its decision to impose the eighty-nine days that have been previously suspended. (*Id.* at 15.) The trial court commented that Michael had failed to abide by the court's order in spite

of being given multiple opportunities, even after the original motion by the State had been filed on January 15, 2013. (*Id.* at 13-14.) Furthermore, the trial court stated that Michael had the burden to pursue or at least raise any psychological issues that could have prevented him from attending the program. (*Id.* at 14.) The trial court followed its decision with a Judgment Entry on May 21, 2013. (R. at 31, J. Entry.) Upon motion, Michael's sentence was stayed pending this appeal, in which Michael alleges three assignments of error.

> **I.   THE TRIAL COURT ABUSED IS [sic] DISCRETION WHEN IT REVOKED APPELLANT'S SUSPENDED SENTENCE AND SENTENCED APPELLANT TO JAIL.**
>
> **II.  THE TRIAL COURT ERRED BY HOLDING APPELLANT IN CONTEMPT OF COURT, BY NOT GIVING APPELLANT AN OPPORTUNITY TO PURGE AND BY IMPOSING A JAIL TERM OF 89-DAYS FOR THAT CONTEMPT.**
>
> **III. A MISDEMEANOR SENTENCE MUST BE REVERSED FOR RE-SENTENCING WHEN NO RIGHT OF ALLOCUTION IS AFFORDED THE DEFENDANT.**

{¶13} We elect to address the assignments of error out of order.

*Second Assignment of Error*

{¶14} In his second assignment of error, Michael argues that the proceedings at issue resulted in a civil contempt and as such, the trial court was required to give him an opportunity to purge himself of the contempt. *See In re Purola*, 73 Ohio App.3d 306, 312, 596 N.E.2d 1140 (3d Dist.1991). Michael

further argues that sanctions for a first-offense contempt could not include an eighty-nine-day jail term. *See* R.C. 2705.05(A) (prescribing contempt penalties and stating that a jail penalty for a first offense does not exceed thirty days).

{¶15} Michael's argument fails because the trial court's action imposing his previously suspended sentence was not contempt. In its motion from January 15, 2013, the State moved "for an order of contempt," *and* for "[imposition of] time previously suspended in this matter." (R. at 18.) The trial court did not issue an order of contempt, however, but ordered only that "the previously suspended 89 days at CCNO are hereby imposed." (R. at 31, at 2.) Michael recognizes that the trial court treated the motion as one for revocation of community control,[4] but he argues that this was an error and that the trial court should have reviewed his violations of the conditions under the contempt standard and thus, it should have afforded him the rights applicable in the contempt proceedings. (Appellant's Br. at 3-4, 9.)

{¶16} Michael then argues that some of the statements made at the hearing indicate that "the trial court viewed the proceeding below to be a contempt hearing." (Reply Br. at 5.) We do not read the trial court's comments that "it is beholden upon the Defendant to comply with the Court's order," as proving that

---

[4] We recognize that the original sentencing entry uses the term "probation" when referring to a one-year reporting period on which Michael was placed. (R. at 14.) Nevertheless, under R.C. 2929.22(A), the trial court was authorized to impose "any sanction or combination of sanctions under sections 2929.24 to 2929.28 of the Revised Code," including community control, R.C. 2929.25, or probation, R.C. 2929.27. The analysis of the issues central to this opinion in both, probation and community control procedures, is the same.

the trial court treated the hearing as a contempt hearing. (*See* Tr. at 14.) At no point in the proceeding did the trial court label the hearing or its order as one for contempt. Furthermore, we have previously held that it is an error for the trial court to treat an action for violation of the terms and conditions of probation (or community control[5]) as a contempt proceedings rather than a revocation hearing. *State v. Jacobs*, 3d Dist. Marion No. 9-2000-15, 2000 WL 924822, *1.

> We note at the outset that the municipal court erroneously treated the action as an indirect contempt proceeding rather than a probation revocation hearing. It is undisputed that the appellant was placed on probation after entering a plea of no contest in March of 1999. Therefore, upon allegedly violating the terms and conditions of her probation, the proper action for the State would have been to file a motion to terminate the appellant's probation rather than a motion to show cause why the appellant should not be held in contempt.

*Id.*; *accord State v. Smith*, 7th Dist. Mahoning No. 01 CA 187, 2002-Ohio-6710, ¶ 8 (holding that where the defendant failed to attend court-ordered counseling sessions that constituted a term of his probation, the proper action was termination of probation rather than contempt); *City of Shaker Hts. v. Hairston*, 8th Dist. Cuyahoga No. 74435, 1998 WL 855601, *5 (Dec. 10, 1998) ("the proper procedure for punishing an offender for violation of probation is [revocation of probation], not a contempt hearing"); *State v. Louden*, 2d Dist. Champaign No. 97-CA-05, 1997 WL 666074, *3 (Oct. 24, 1997)). *But cf. State v. Patton*, 10th Dist. Franklin No. 06AP-665, 2007-Ohio-1296, ¶ 12 (holding that "[u]nquestionably,

---

[5] *See* note 4, *supra*.

the preferred method for dealing with actions [for not following conditions of probation] would be the institution of revocation proceedings," although the courts have broad authority to use contempt in those actions as well).

{¶17} Therefore, if the trial court had treated the action as a contempt proceeding, we would have found it improper. The State in this case should have filed a motion to revoke Michael's probation rather than a motion to show cause. Nevertheless, in spite of this labeling, the trial court properly interpreted the motion as requesting revocation of probation and imposition of time previously suspended, not as a motion for contempt or a motion to show cause. We see no error in the trial court's treatment of the motion this way and in conducting a hearing on the issue of whether Michael violated the terms of his probation and whether his suspended sentence should be revoked as a result. Having so found, we will address Michael's remaining assignments of errors under the standard of review applicable to a revocation hearing.

{¶18} Michael's second assignment of error is hereby overruled.

*First Assignment of Error*

{¶19} Michael argues that the trial court erred when it revoked his suspended sentence and sentenced him to jail. He contends that his failure to comply with conditions of the suspension was due to circumstances beyond his control, i.e., due to his alleged "psychological issues" and the Center's failure to evaluate him for these issues. (Appellant's Br. at 6-8.) Accordingly, Michael

-11-

claims that the trial court abused its discretion by not considering these circumstances, as he did not willfully violate the conditions; rather he was unable to comply with them.

{¶20} "The privilege of probation rests upon the probationer's compliance with the probation conditions and *any* violation of those conditions may properly be used to revoke the privilege." (Emphasis sic.) *State v. Patierno*, 3d Dist. Defiance No. 4-08-08, 2009-Ohio-410, ¶ 24, quoting *State v. Bell*, 66 Ohio App.3d 52, 57, 583 N.E.2d 414 (5th Dist.1990). In order to support revocation of probation, the State must satisfy the burden of establishing that the defendant violated its conditions. *Jacobs*, 2000 WL 924822, at *2. But a hearing on the revocation of probation differs from a criminal trial in that the state is not required to establish a violation of the terms of probation "beyond a reasonable doubt." *Id.*; *State v. Hylton*, 75 Ohio App.3d 778, 782, 600 N.E.2d 821 (4th Dist.1991). The evidence of a violation "need only be substantial in nature to justify the revocation." *Jacobs*, 2000 WL 924822, at *2; *State v. Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 7.

{¶21} "The decision to revoke probation rests within the sound discretion of the trial court." *Jacobs*, 2000 WL 924822, at *2. Thus, we will not reverse the trial court's decision absent an abuse of that discretion. *Id.*; *State v. Berry*, 2012-Ohio-4660, 980 N.E.2d 1087, ¶ 33 (3d Dist.). Because abuse of discretion connotes more than an error in judgment, we will not substitute our judgment for

that of the trial court, and will only reverse the trial court's decision if "the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Id.*, citing *State v. Adams,* 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

{¶22} Michael did not present any evidence at his hearing on the State's motion. The State, on the other hand, established that Michael failed to participate in the Program from the beginning and only attended after being given a second chance upon his probation officer's request. Even then, however, Michael resisted the treatment and claimed that he did not need to participate because his placement in the Program was due to a mistake. He again discontinued participating in the Program in April 2013. Based upon this undisputed evidence, the trial court found that Michael did not fulfill the condition of his suspended sentence.

{¶23} Challenging the trial court's findings, Michael points to three cases where revocation of probation or community control was not justified if the defendant was unable to comply with the court-imposed terms due to circumstances beyond his control. (*See* Appellant's Br. at 4-5.) In *State v. Bleasdale*, the appellate court held that revocation of probation was not justified where the defendant was cooperating with the program but was terminated "due to the program's inability to properly minister his case." 69 Ohio App.3d 68, 72, 590 N.E.2d 43 (11th Dist.1990). In *State v. Scott*, revocation was not justified where the probationer, in spite of a good faith effort, lacked capacity to make court-ordered payments, but was "a model probationer" "in all other respects." 6 Ohio

App.3d 39, 41-42, 452 N.E.2d 517 (2d Dist.1982). In *State v. Hardy*, the appellate court held that the defendant's placement with his sister was an expectation rather than a condition of the community control and therefore, the defendant was not in violation. 5th Dist. Guernsey No. 01CA15, 2002 WL 276777. Michael claims that his case is analogous to these cases and therefore, revocation of his probation was not justified, because he was unable to participate in the Program due to circumstances beyond his control.

{¶24} The cases cited by Michael are all distinguishable. First, in *Bleasdale*, *Scott*, and *Hardy*, there was evidence that the defendants attempted and were willing to fulfill conditions imposed upon them. Here, Michael was uncooperative from the beginning by failing to attend the Program or to contact the Center in any way after his initial diagnostic assessment. Second, in the cases cited by Michael, substantial evidence was presented explaining why the defendants were unable to fulfill the conditions. In this case, there was no evidence in support of Michael's claim that he was unable to participate in the Program due to his "psychological issues." No evidence of any psychological issues was presented at Michael's sentencing hearing in September 2012. Similarly, during the eight and a half months between the sentencing and the revocation hearing, there were no allegations or indications that Michael's failure to attend the Program was related to any possible psychological issues.

{¶25} Even though the Center initially recommended that Michael should undergo a psychological evaluation, his participation in the Program was not conditioned or dependent upon undergoing that evaluation, nor upon the results of it. Therefore, we cannot hold, as Michael urges us to, that the Center's failure to administer its own two-part treatment program caused his failure to complete the program. Moreover, the evidence before us does not show that this recommendation was made as a result of finding, or even suspecting, any "psychological issues."

{¶26} The first time the matter of Michael's mental condition was brought before the trial court was during the closing statement at the revocation hearing, when Michael's counsel stated, "it appears that * * * there are some other issues that Mr. Michael needs to deal with properly first before being able to successfully complete a program of this type." (Tr. at 13.) In response to this comment by the trial counsel, the trial court noted in its Judgment Entry that Michael "seemed to imply that he had some psychological issues." (R. at 31, at 2.) The trial court then found that Michael "failed to set forth any evidence as to what those psychological issues are or that they prevent him from attending the Court ordered Program." (*Id.*) Accordingly, Michael's allegation that "the trial court did not consider his psychological health as a factor before imposing the suspended sentence" (Appellant's Br. at 6), is incorrect because the above comments show that the

matter was considered and addressed in the written opinion. It was also addressed at the hearing. (Tr. at 14.)

**{¶27}** The trial court is entitled to deference on its findings of fact because it is "in the better position to observe the witnesses and hear their testimony" at the community control or probation revocation hearing. *Patierno*, 2009-Ohio-410, at ¶ 23; *State v. Miller*, 10th Dist. Franklin No. 03AP-1004, 2004-Ohio-1007, ¶ 10. Here, the judge, as the trier of fact, was free to accept or reject the suggestion made by Michael's counsel that was unsupported by any evidence. *See State v. Solomon*, 5th Dist. Morrow No. 2012-CA-7, 2012-Ohio-4884, ¶ 26 (holding that where the only evidence that the defendant could not report to his probation officer due to his mental illness came from the defendant himself and was unsupported by any medical or other testimony, the trial court did not err by revoking the defendant's community control). We hold that the unrebutted evidence proffered by the State was sufficient to satisfy the "substantial" standard for proving a violation of the term of probation. Therefore, the trial court did not act in an unreasonable, arbitrary, or unconscionable way by revoking Michael's probation and imposing the previously suspended sentence.

**{¶28}** Accordingly, we overrule Michael's first assignment of error.

*Third Assignment of Error*

**{¶29}** In his third argument on this appeal, Michael demands a reversal of his sentence claiming that the trial court failed to afford him the right of allocution

before imposing the previously suspended eighty-nine days in jail.  The right of allocution is provided in Crim.R. 32(A)(1), which states that "[a]t the time of imposing sentence, the court shall * * * [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."  Crim.R. 32.  The remedy for a violation of a criminal defendant's right to allocution is a remand for resentencing.  *State v. Campbell*, 90 Ohio St.3d 320, 326, 738 N.E.2d 1178 (2000).  Michael does not argue that the trial court failed to afford him the right of allocution at his original sentencing hearing.  Rather, he claims that this right was violated when the trial court revoked his suspension.

{¶30} Michael's argument is without merit because there is no requirement for the right of allocution at a revocation hearing.  *State v. Krouskoupf*, 5th Dist. Muskingum No. CT2005-0024, 2006-Ohio-783, ¶ 15.  The Seventh District Court of Appeals addressed this subject in *State v. Favors*, 7th Dist. Mahoning No. 08-MA-35, 2008-Ohio-6361.  In that case, the trial court conducted a community control revocation hearing and, without giving the defendant the right of allocution, reinstated the sentence that was previously imposed.  *Id.* at ¶ 13.  Upon a challenge similar to the one at issue herein, the court of appeals recognized that the fifth and eighth appellate districts "have determined that a trial court need not afford a defendant the right of allocution before reinstating a sentence at a

community control revocation proceeding." *Id.* at ¶ 15-17, citing *Krouskoupf*, 2006-Ohio-783, ¶ 15, *and State v. Henderson*, 8th Dist. Cuyahoga No. 42765, 1981 WL 10370, *5 (June 18, 1981) ("There was no requirement that appellant be afforded an opportunity to speak prior to the imposition of sentencing at his probation revocation proceeding."). The Seventh District Court of Appeals recently reaffirmed this holding in *State v. Turjoniz*, 7th Dist. Mahoning No. 11 MA 28, 2012-Ohio-4215, ¶¶ 6, 13.

**{¶31}** We follow the fifth, seventh, and eighth districts and hold that the right of allocution does not apply to a hearing on the issue of whether the defendant violated the terms of his or her probation and whether the previously suspended sentence should be imposed. Therefore, the trial court is not required to give the defendant an opportunity to speak before imposing the previously suspended sentence.

**{¶32}** It follows that the trial court did not violate Michael's right of allocution and the third assignment of error is thus overruled.

**{¶33}** Before concluding, we will address one more matter, not specifically raised in the assignments of error. In his Reply Brief, Michael brings up a notion that the State's January 15, 2013 motion to show cause should have been dismissed as irrelevant and premature after Michael was given another chance with the Center and started attending the Program in February 2013. (Reply Br. at 2, 4.) He further claims that his conduct prior to January 15, 2013, was made

irrelevant by the agreement with Ms. Glass to let him back into the Program. (*Id.*) Michael asserts that the trial court violated his due process rights by requiring him to appear in court on the State's "premature motion" and by reviewing the "immaterial" conduct. (*Id.*)

{¶34} Michael cites no law in support of this new argument. Furthermore, this matter was not brought to the attention of the trial court and was not addressed in Michael's initial brief. Thus, the State was not given an opportunity to respond to it and the trial court did not address it. Accordingly, we refuse to decide this new argument on appeal. *See State v. Peagler*, 76 Ohio St.3d 496, 501, 668 N.E.2d 489 (1996) ("A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue.").

{¶35} Additionally, we note that it was Michael who, in April 2013, requested the hearing on the State's January motion, after being discharged from the Program. (R. at 26.) Therefore, he is incorrect in stating that "the State and the trial court required" him to appear in court on the motion. (Appellant's Br. at 4-5.) Finally, even if the January motion had been rendered premature or irrelevant by Michael's later compliance with the court ordered sanctions, the motion was revived by Michael's April filing requesting a hearing on the State's January motion.

*Conclusion*

**{¶36}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant, in the particulars assigned and argued. The judgment of the Napoleon Municipal Court in Henry County, Ohio is thereby affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/jlr**