[Cite as *State v. Rutherford*, 2026-Ohio-1895.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-21 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 206 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JASON BROOKE RUTHERFORD | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 22, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

JOHN A. FISCHER, Attorney for Appellant
SAMANTHA B. WHETHERHOLT, Attorney for Appellee

**{¶ 1}** Jason Brooke Rutherford appeals from a decision of the Champaign County Common Pleas Court revoking his community control sanctions and sentencing him to a 48-month consecutive sentence. For the following reasons, the judgment of the trial court is affirmed.

**Facts and Procedural History**

**{¶ 2}** On January 3, 2024, Rutherford was indicted on one count each of telecommunications harassment and violating a protection order. He pleaded guilty as charged on January 26, 2024. On February 22, 2024, Rutherford was sentenced to community control sanctions for five years.

**{¶ 3}** On September 17, 2024, a notice of supervision violation was filed by Rutherford's probation officer. The notice alleged that Rutherford violated standard condition of supervision #1, which obligated him to obey federal, state, and local laws and ordinances, including those related to illegal drug use and registration with authorities. According to the notice, Rutherford violated a protection order issued by a Madison County court by contacting J.J. on or about February 21, 2024, through July 2024, and by harassing J.J. via Facebook Messenger on or about July 20, 2024. The notice further alleged that Rutherford violated the special condition of supervision that he notify his probation officer of any romantic relationship that lasted more than a month by failing to report his relationship with J.J.

{¶ 4} After a hearing on the notice on October 2, 2024, the court issued an entry stating that Rutherford did not contest probable cause and admitted the violations. The court returned Rutherford to community control with the same standard and special conditions, and it imposed a sentence of 92 days in the Tri-County Jail.

{¶ 5} On May 6, 2025, a second notice of supervision violation was filed. Rutherford's probation officer alleged that Rutherford violated standard condition of supervision #1 on or about March 24 – 26, 2025, by holding himself out to be Robert Hill, the manager of the Finch Street Apartments where Rutherford resided. It was further alleged that during the same time period, Rutherford, by deception, acted with the purpose to deprive Fraley's Towing of towing services for a vehicle Rutherford had no authority to request to be towed.

{¶ 6} A merits hearing occurred on July 2 and 11, 2025. Rutherford contested probable cause, and the court found that probable cause existed. After the hearing concluded, the court issued the decision at issue herein. Rutherford timely appealed. Before addressing Rutherford's assigned errors, we review the transcripts of the hearings on July 2 and 11, 2025.

{¶ 7} At the first hearing, Hailey Moran testified that she and Rutherford were neighbors at the Finch Street Apartments. She stated that when she returned home from work on March 26, 2025, around 10:00 p.m., her car was missing. Moran noted that about a week earlier, she had received a handwritten note about her "piece of junk car," stating that it would be towed if she did not move it. According to Moran, she was involved in an accident in the car earlier in the month, but it was still operational and in her possession.

{¶ 8} Moran called the apartment manager, Hill, upon receipt of the note to ask if he had written it, and according to her testimony, he denied doing so and advised her to call law enforcement. She stated that she had previously advised Hill that the damaged vehicle

3

would be parked at the apartment complex for a time while she awaited resolution from her insurance company, and that he granted her permission to keep it in the lot. Moran testified that she parked the car behind the apartment building as close to her rear window as possible, but it was closer to Rutherford's window. According to Moran, law enforcement responded to her home, and her boyfriend, after phoning area towing companies, learned that Fraley's Towing had the car. Moran recovered her car from Fraley's.

{¶ 9} Moran testified that she became aware that Rutherford had had her car towed after law enforcement obtained his number from Fraley's. She further learned that Rutherford told Hill that he would pay $200 towards her rent if she dropped the charges, which she refused to do. Moran contacted the probation department and reported the incident.

{¶ 10} Amy Ropp, an employee of Fraley's for over 25 years, testified that a week or so before March 26, 2025, she received a call from "Robert Hill, the property manager at the Finch Street Apartments," who stated that there were two vehicles on the property that were not properly tagged and needed to be removed. Ropp received a second call a few days later from "Hill" about the cars. She advised him to contact the Urbana Police to confirm that the vehicles were not stolen, and if not, to place notice on the vehicles if the owners were residents of the complex and allow them two weeks to address the issue. According to Ropp, "Hill" advised her that he had already done so, having been so directed by the police. She stated that Fraley's will not tow a vehicle under such circumstances unless notice is first provided. Ropp testified that after Fraley's did not respond, "Hill" called again. She sent a driver to the apartment complex on March 26, 2025, to tow Moran's vehicle.

{¶ 11} Ropp testified that the initial calls regarding the cars she received were from a private number, and the third call was from an unblocked number, which she identified. Ropp

4

stated that she sent a text message to the caller, advising that one of the vehicles (Moran's) would be towed. Ropp testified that she believed she was texting the property manager of the apartments.

{¶ 12} Officer Keith Hurst of the Urbana Police Department testified that on March 26, 2025, he was dispatched to the Finch Street Apartments on the report of a stolen vehicle, where Moran advised him of the situation regarding her missing car. Hurst confirmed that Fraley's Towing removed Moran's vehicle and obtained from Ropp the number requesting the tow. Hurst learned that the phone number was Rutherford's and returned to the Finch Street Apartments, where Moran advised that Rutherford was her neighbor and Hill was the property manager. After speaking to Hill, Hurst learned that Hill had not requested or given permission for the tow. Hurst stated that he learned from Officer Lance Turner that the police received a call from the same phone number provided by Ropp prior to March 26, 2025, requesting the tow of a vehicle. According to Hurst, Turner advised the caller that the property manager needed to request the tow.

{¶ 13} Chris Caughman of the Department of Corrections, Probation Division, testified that he was assigned to investigate phone calls made by Rutherford to Fraley's because Rutherford's probation supervisor was out of town. Caughman spoke to Rutherford in jail, and he advised that he had observed a police officer looking at two vehicles on March 14, 2025, while on work release. Rutherford said that he did not know who owned the vehicles, but that he put a note in Moran's mailbox stating that her vehicle may be towed. According to Caughman, Rutherford repeatedly denied impersonating Hill. Caughman testified that Rutherford admitted that he wanted the vehicle towed and that he had contacted Fraley's.

5

{¶ 14} Ashley McIntosh, Rutherford's probation officer, testified that she became involved in the investigation after returning from leave and receiving the investigative files of the police department and Caughman. She communicated with Rutherford on the phone number identified by Ropp. According to McIntosh, Rutherford advised her that he had one window to look out of in his apartment and did not want to see the vehicles. She provided text messages between her and Rutherford to the prosecutor's office, in which she advised him that he had no right to have the vehicle towed. McIntosh testified that Rutherford responded that "his landlord and him may have an agreement. But they were waiting on [Moran] to agree."

{¶ 15} At the subsequent hearing on July 11, 2025, Hill gave an account consistent with Moran's testimony regarding the note she received and her car remaining on the lot. Hill confirmed that after speaking to Officer Hurst, the number that called Fraley's to tow the vehicle belonged to Rutherford. Hill stated that Rutherford contacted him twice "to discuss and go over some kind of proposal to just drop everything and move past it all."

{¶ 16} Officer Lance Turner of the Urbana Police Department testified that he was dispatched to the Finch Street Apartments on an anonymous call about towing two vehicles. He stated that he learned Moran's vehicle was registered, and determined not to tow it because it was on private property. The reporting caller then called again and asked Turner to call the property manager about towing the vehicles.

{¶ 17} Rutherford testified that prior to March 26, 2025, he was on work release from 4:00 a.m. until 4:30 p.m. He stated he was concerned about Moran's vehicle as a potential fire hazard because it was leaking fluids. But he also stated that he did not contact the fire department or Hill, nor did he reach out to the owner of the vehicle because he did not know who it was. Rutherford stated that he called Fraley's three times without identifying himself;

6

he denied representing that he was Hill. Once Rutherford learned from the police where Moran lived, he put the unsigned note in her mailbox. According to Rutherford, after his three anonymous phone calls, Fraley's towed the car. Thereafter, Rutherford offered $200 to Moran, via a text message to Hill, for her rent because he believed that she had to pay to get her car back. Rutherford acknowledged that the message stated, "[M]oney always talks. LOL. But everything needs to be written out. And the officer needs to tell me that the investigation is closed."

**Assignment of Error and Analysis**

I.

{¶ 18} Rutherford asserts two assignments of error. In this first assignment of error, he claims that the trial court erred by revoking his community control sanctions and sentencing him to prison. He argues that his revocations were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 19} "'The privilege of probation [or community control] rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege.'" *State v. Russell*, 2009-Ohio-3147, ¶ 7 (11th Dist.), quoting *State v. Bell*, 66 Ohio App.3d 52, 57 (5th Dist.1990). "The right to continue on community control depends upon compliance with community control conditions and is a matter resting within the sound discretion of the court." *State v. Jackson*, 2010-Ohio-2836, ¶ 56 (2d Dist.). Thus, we review the trial court's decision to revoke a defendant's community control for an abuse of discretion. *Id.* "Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.*

7

**{¶ 20}** The State has the burden to prove the offender violated the terms of community control. *State v. Michael*, 2014-Ohio-754, ¶ 20 (3d Dist.). A community control violation hearing is not a criminal trial, so the State need not prove a violation beyond a reasonable doubt. *State v. Cofer,* 2009–Ohio–890, ¶ 12 (2d Dist.), citing *State v. Hylton*, 75 Ohio App.3d 778, 781 (4th Dist. 1991). "The State need only present substantial evidence of a violation of the terms of a defendant's community control." *Id.* In this context, substantial evidence consists of "more than a mere scintilla of evidence but less than a preponderance of evidence." *State v. Hope*, 2019-Ohio-3023, ¶ 14 (6th Dist.), citing *State v. Clark*, 2013-Ohio-2831, ¶ 15 (6th Dist.)

**{¶ 21}** Here, the State did so, as there was substantial evidence that Rutherford violated standard condition of supervision #1, which required him to obey federal, state, and local laws and ordinances. Rutherford falsely held himself out to be Hill, the property manager of the Finch Street apartments, and by deception, he acted with the purpose to deprive Fraley's of towing services. The evidence established that Rutherford relentlessly pursued the towing of Moran's vehicle, and then he attempted to evade responsibility by means of a "deal" with her. He called the police about the car, and he called Ropp repeatedly. Based solely on Rutherford's representations as the property manager, Fraley's towed the vehicle. Hill never requested or gave permission for the tow. Instead he had specifically allowed Moran to keep her damaged vehicle on the parking lot at the apartments. Rutherford acknowledged that he had called Fraley's, put the note in Moran's mailbox, and told his probation officer that he did not want to view the wrecked vehicle from his apartment. Because the State presented substantial evidence that Rutherford violated community control, Rutherford's first assignment of error is overruled.

8

**{¶ 22}**  In his second assignment of error, Rutherford claims that the court erred in imposing consecutive sentences because it failed to provide adequate notice at his initial sentencing hearing that consecutive sentences were a possibility. He directs our attention to his February 22, 2024 judgment entry of conviction, which states, "Where applicable, if multiple offenses are involved, the Court will also make the determination of whether to impose concurrent or consecutive sentences for his community control violations."

**{¶ 23}** When reviewing felony sentences, we must apply the standard of review set forth in R.C. 2953.08(G). *State v. Worthen*, 2021-Ohio-2788, ¶ 13 (2d Dist.). Under this standard, an appellate court may increase, reduce, or modify a sentence, or vacate it altogether and remand for resentencing, if it "'clearly and convincingly' finds either (1) the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." *Id*.

**{¶ 24} {¶ 8}** R.C. 2929.19(B)(4) states:

If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the range from which the prison term may be imposed as a sanction for the violation, which shall be the range of prison

9

terms for the offense that is specified pursuant to section 2929.14 of the Revised Code and as described in section 2929.15 of the Revised Code.

{¶ 25} {¶ 9} "Compliance with R.C. 2929.19(B)(4) is a prerequisite to imposing a prison term for a community control violation." *State v. Clinton*, 2022-Ohio-717, ¶ 14 (2d Dist.), citing *State v. Howard*, 2020-Ohio-717, ¶ 13, citing *State v. Brooks*, 2004-Ohio-4746, ¶ 29. When "a court revokes community control, it may require that the reserved prison term be served consecutively to any other sentence then existing or then being imposed but only if at the time it imposed community control, it notified the offender that a consecutive sentence on revocation was a possibility." *State v. Jones*, 2022-Ohio-4485, ¶ 2. *Jones* emphasized that this "does not mean that a trial court must notify an offender of the possibility of consecutive sentences in every instance but that in any case in which it does not provide such notice, imposing a consecutive sentence is not available to that court if community control is later revoked." *Id.* "The requirement of a statutorily defined notification upon sentencing of an offender to a community-control sanction is not satisfied by notification given in the trial court's journal entry issued after sentencing." *State v. Hatfield*, 2005-Ohio-6259, ¶ 8 (2d Dist.), citing *Brooks* at ¶ 17-18.

{¶ 26} Rutherford has not fulfilled his duty under App.R. 9(B) to provide a transcript of the proceedings to which he directs our attention. Our appellate file does not contain a disposition transcript from the February 22, 2024 proceeding. In the absence of a transcript, we must presume regularity in the proceedings before the trial court. *State v. Hudson*, 2018-Ohio-4880, ¶ 17 (2d Dist.), citing *State v. Kreuzer*, 1999 WL 959206 (2d Dist. Aug. 6, 1999); *State v. Miller,* 2014-Ohio-4508, ¶ 26 (2d Dist.). Therefore, Rutherford's argument that the trial court failed to comply with R.C. 2929.19(B)(4) is without merit, and Rutherford's second assignment of error is overruled.

10

## Conclusion

{¶ 27} Having overruled both of Rutherford's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.