DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court sentenced appellant, Raymond Scott, to serve six months in jail for criminal nonpayment of child support after appellant admitted to violating the terms of his probation. Appellant sets forth the following as sole assignment of error on appeal:
 {¶ 2} "Assignment of Error No. 1
 {¶ 3} "The trial court of the Lucas County Court of Common Pleas denied the Defendant-Appellant due process and equal protection of law by revoking his probation, due to his failure to make all of his child support and restitution payments, without first making a determination of his ability to pay."
 {¶ 4} On June 11, 1999, appellant was indicted by the Lucas County Grand Jury on one count of criminal nonpayment of child support, in violation of R.C. 2919.12(B) and (G)(1), a fifth degree felony. On March 16, 2000, pursuant to a plea bargain, appellant entered a no contest plea and was found guilty of one count of the lesser offense of nonsupport of dependents, a first degree misdemeanor. Appellant received a six-month jail sentence, after which he was placed on probation for three years. Conditions of appellant's probation were as follows: "1) seek and maintain gainful employment 2) keep current on child support obligations and pay on the arrearage 3) pay the costs of prosecution as well as the assigned counsel fees 4) pay on restitution."
 {¶ 5} On March 14, 2003, the Lucas County Adult Probation Department filed a request to terminate appellant's probation unsuccessfully, due to appellant's failure to remain current in his child support payments and pay court costs. The trial court denied the request to terminate probation.
 {¶ 6} On April 1, 2003, a hearing was held, at which the trial court found appellant was indigent. The matter was continued for one week. On April 8, 2003, appellant, represented by appointed counsel, admitted to violating the terms of his probation and waived his right to a further hearing on that issue. In mitigation of sentencing, appointed counsel told the trial court appellant was unable to make full child support payments because his regular employment had been terminated. Counsel further stated appellant was unaware at the time of sentencing that he was required to pay court costs.
 {¶ 7} Appellant told the trial court he was unaware of the terms of his probation, other than the obligation to "call in" to his probation officer. Appellant further stated he was looking for a job and would be "glad to pay" court costs after obtaining new employment. The trial court accepted appellant's admission and continued the case for three more months, after stating:
 {¶ 8} "Mr. Scott, I'm giving you three months to see what you do during the interim of that time. You may know before you come back into the courtroom what I'm going to do because if you're doing what you're supposed to be doing, I will keep you on community control or I might terminate the community control, but if you're not making these payments, you may end up doing [six months] at Stryker."
 {¶ 9} On July 10, 2003, a hearing was held, at which appellant's counsel gave the trial court a receipt showing appellant paid "nearly half" of the $466.50 in court costs. Counsel stated appellant was currently receiving $300 every other week in unemployment benefits; he was taking care of his bedridden mother; and his car was not in working order. The trial court then observed that appellant did not pay the court costs when he was employed, to which appellant once again responded he was not previously aware of his obligation to pay court costs. The trial court also noted appellant had a $10,000 child support arrearage; however, only $13.50 was being withheld from his unemployment benefits every two weeks.
 {¶ 10} After hearing the above testimony, the trial court extended appellant's probation for 12 more months, and ordered appellant to pay the remainder of the court costs within 6 months. The trial court then stated:
 {¶ 11} "Mr. Scott, I guess my alternative was to put you in jail today. I don't know if that would do any good as far as making payments on the court costs or your child support. I don't want to see you back here during the balance of this probationary period. If I do, it might require me to put you in a state institution. * * *"
 {¶ 12} In April 2004, a probation report was filed in which appellant was again accused of not making timely child support payments.[1] On April 27, 2004, a hearing was held, at which appellant, represented by appointed counsel, admitted to the violation and waived his right to a further hearing on that issue. In mitigation, appointed counsel told the trial court appellant was unable to make child support payments because his unemployment benefits ended in January 2004. Counsel stated appellant was in the process of looking for a new job, and was attending college classes to earn a sociology degree. Counsel asked the trial court to "hold off on sentencing" to allow appellant time to find a new job and resume making child support payments.
 {¶ 13} The prosecutor did not object to an extension of appellant's probation. She did, however, remind the trial court that appellant had not found a new job in the last two years, and the current hearing was being held pursuant to appellant's second probation violation. The trial court continued the matter for three more months, after stating:
 {¶ 14} "Mr. Scott, I am continuing this matter for the purpose of sentencing. I would hope you would take this opportunity, three months, to get a job and start making payments again. Obviously my job here is to monitor your activities. If you're not making payments, I may have to put you in jail. I hope I don't have to do that, but if you're not making payments at that time period it will leave me no alternative but to put you in a state institution. * * *"
 {¶ 15} On July 10, 2004, the sentencing hearing was held. In mitigation, appointed counsel told the trial court appellant was attending Lourdes College both as a "betterment to the community" and to obtain "the skills with which he can get a job more meaningful than the ones he's [been] able to secure in the past." Appointed counsel presented appellant's unemployment journal in which appellant recorded "numerous contacts" with prospective employers. Counsel stated appellant declined offers of employment in Columbus and Cincinnati so he could continue taking college classes, and he is minimally employed through the work-study program at Lourdes College. Counsel further stated:
 {¶ 16} "[Appellant is] working towards trying to continue to try to find better employment so he can better provide for the dependants, but at the same time he's trying to improve himself so he can put himself in a position of more substantial and long-term employment."
 {¶ 17} Appellant told the trial court he could pay more toward his child support arrearage in the fall, because his paid work-study hours would increase. Appellant also stated he was taking care of his ill father, and he had contacted the child support enforcement agency, which was willing to "work with me on my arrearage."
 {¶ 18} After hearing the above statements, the trial court addressed appellant as follows:
 {¶ 19} "The Court: Well, Mr. Scott, I continued this case from April 27th for a particular purpose and when I do that, I want to see what you do during the interim. This report is shocking to me that you didn't take the opportunity these three months to do something more than what you did. It's just a continuation of the same reasons you were here on April 27th, and the same reason you were here last year with the other probation or community control violation. You're just not taking this obligation seriously, and when I put somebody on community control or probation I expect them to comply. I've given you one prior community control violation. I continued this. I could have put you in jail on April 27th. I continued it until today's date so you could make some payments. That doesn't take a rocket scientist to understand that when I continued this case until today I expected some relatively major payments. You made one five dollar payment on June 28th. I don't know what you paid today."
 {¶ 20} "Appellant: Forty dollar payment today.
 {¶ 21} "The Court: That's not what I was looking for when you're $10,000 behind."
 {¶ 22} On July 28, 2004, the trial court filed a judgment entry in which it revoked appellant's probation and sentenced him to serve six months in jail. In addition, the court found appellant had "or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law" and ordered appellant to pay those costs. On August 6, 2004, appellant sent the trial court a hand-written letter requesting reconsideration of his sentence, which the trial court rejected on August 30, 2004. On September 7, 2004, a timely notice of appeal was filed.
 {¶ 23} On appeal, appellant argues the trial court erred by revoking his probation and sentencing him to six months in jail without inquiring as to his ability to pay his past-due child support and/or making a finding that his failure to pay was willful.
 {¶ 24} "`The privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege'." State v.Simpson, 12th Dist. No. CA2000-12-251, 2002-Ohio-1909, quoting State v.Crowder (Oct. 22, 2001), 12th Dist. No. CA2001-02-023, at 3, citing Statev. Bell (1990), 66 Ohio App.3d 52, 57. On appeal, the trial court's decision to revoke or continue probation will not be reversed absent a finding of abuse of discretion. Id. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 25} Appellant urges this court to find the trial court erred when it revoked his probation, based on our prior decision in State v.Majoras (June 8, 2001), 6th Dist. No. E-00-048. We decline to do so, for the following reasons.
 {¶ 26} In Majoras, this court stated that "before a trial court may revoke probation for failure to pay child support in a criminal non-support case, it must make a determination the probationer willfully refused to pay or did not make sufficient efforts to acquire the resources pay." Id. In Majoras the appellant, James Majoras, admitted to not paying his court-ordered child support, but did not admit to violating the terms of his probation. Majoras told the trial court he was unemployed, and had made a failed attempt to open his own business. No evidence was presented that Majoras' failure to pay child support was willful. In addition, the record did not show the trial court considered alternative methods of punishment, or that the Majoras was offered employment and either turned it down or voluntarily stopped working. Accordingly, we found the trial court erred by not making any effort to determine whether the defendant had the ability to pay before revoking his probation. Majoras, supra.[2]
 {¶ 27} Our decision in Majoras was based on Bearden v. Georgia
(1983), 461 U.S. 660, in which the United States Supreme Court held:
 {¶ 28} "In revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures of punishment are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made bone fide efforts to pay. To do so otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." Id. at 672.
 {¶ 29} In contrast to our decision in Majoras, supra, in State v.Simpson, 12th Dist. No. CA2000-12-251, 2002-Ohio-1909, the Twelfth District Court of Appeals, also analyzing the above passage fromBearden, concluded the trial court did not abuse its discretion by revoking a child support obligor's probation without making an express determination as to his ability to pay. In that case the appellant, Jerry Simpson, unequivocally admitted to a probation violation. Simpson offered no evidence of his inability to pay at either of two separate hearings. The appellate court, distinguishing the facts before it from those inBearden, found the record contained adequate evidence to demonstrate Simpson's refusal to pay was willful.
 {¶ 30} In this case, as in Simpson, the record shows appellant unequivocally admitted to a probation violation and waived his right to a further hearing. In addition, ample evidence was presented, through statements made by appellant and his appointed counsel, that appellant, a 54 year-old man, had several opportunities to obtain full-time employment, but deliberately turned them down. Specifically, the record contains evidence that appellant chose to remain minimally employed and attend college, in the hopes of making more money for himself in the future, rather than heed the trial court's multiple warnings and obtain adequate employment so he could pay his current child support arrearages. We agree with the appellate court in Simpson, supra, that under such circumstances, the trial court should not be required to make findings as to an offender's ability to pay before revoking his probation.
 {¶ 31} This court has reviewed the entire record of proceedings in the trial court and, upon consideration, we find the trial court did not abuse its discretion when it revoked appellant's probation and ordered him to serve six months in jail without making a specific determination as to his ability to pay.[3] Appellant's sole assignment of error is found not well-taken. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County, and for which execution is awarded. See App. R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Handwork, J., Skow, J., Parish, J. concur.
[1] The probation report was referenced by the trial court in its final judgment entry; however, a copy of the report was not made a part of the trial court's record.
[2] We did not specify whether the trial court's judgment entry had to contain a specific determination as to the defendant's ability to pay, or whether an inquiry on the record would suffice.
[3] The trial court did, however, make the mandatory determination that appellant has, or may reasonably be expected to have, the ability to pay all or part on the costs of supervision, confinement, assigned counsel, and prosecution, before ordering him to pay those costs in its July 27, 2004 judgment entry.