[Cite as *State v. Hinzman*, 2024-Ohio-2452.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113291 |
| v. | : | |
| JOSHUA HINZMAN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2024

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-21-665876-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Mallory Buelow, Assistant Prosecuting
Attorney, *for appellee*.

Jonathan N. Garver, *for appellant*.

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant Joshua Hinzman ("Hinzman") appeals the trial court's determination finding him a community control[1] sanction violator and asks this court to reverse the trial court's decision and vacate the sentence imposed. We affirm.

## I.     Facts and Procedural History

**{¶2}** On October 11, 2022, Hinzman pleaded guilty to an amended indictment that included the following charges: assault, a fourth-degree felony, in violation of R.C. 2903.13(A); and obstructing official business, a first-degree misdemeanor, in violation of R.C. 2923.02 and 2921.31(A). The trial court sentenced Hinzman to two years of probation with the following conditions:

> The court finds that a community control/probation sanction will adequately protect the public and will not demean the seriousness of the offense. It is therefore ordered that the defendant is sentenced to 2 year(s) of community control/probation on each count, under supervision of the adult probation department. The defendant must abide by the rules and regulations of the probation department in addition to the following conditions: Court orders defendant to be supervised by: regular supervision unit; submit to regular drug testing; submit to random drug testing; successfully complete an in-patient treatment program; participate in TASC case management and follow all recommendations of the program; attend AA/NA/CA or self help meetings, 7 per week; provide proof of meeting to the supervising officer; attend all programming indicated in your case plan; and monthly drug and alcohol testing. Defendant to maintain

---

[1] Probation and community-control are used interchangeably. "Because community control is the functional equivalent of probation, this proposition applies with equal force to community-control sanctions. With the passage of Am.Sub.S.B. No. 2 in 1995, community control replaced probation as a possible sentence under Ohio's felony sentencing law." *State v. Talty*, 2004-Ohio-4888, ¶ 16.

100% abstinence from all alcohol and illegal drugs including marijuana . . . . Violation of the terms and conditions may result in more restrictive sanctions, or a prison term of 18 months in prison as approved by law.

Journal Entry No. 136523015 (Jan. 4, 2023).

{¶3} Hinzman failed to appear to the probation department. On April 20, 2023, the trial court set a community control sanctions violation hearing for May 1, 2023, but the hearing was moved to May 9, 2023, because Hinzman was sick. On May 9, 2023, the trial court stated:

> Court finds defendant, Joshua Hinzman, to be in violation of community control conditions/sanctions. Reason(s): The defendant failed to appear to the probation department as instructed. Defendant left the drug treatment program. Community control is continued. Defendant qualifies to be sentenced to a community residential sanction pursuant to R.C. 2929.16. The defendant is ordered to be screened by CBCF personnel, if not already completed. If found eligible, as a condition of defendant's community control, pursuant to R.C. 2929.16(A)(1), the defendant is ordered into the Judge Nancy R. McDonnell Community Based Correctional Facility and to successfully complete the CBCF program and follow all program recommendations, including aftercare. It is further ordered that if the Defendant fails to follow program rules and regulations of the CBCF program, or if the defendant is discharged for any reason, other than a successful discharge, said defendant shall be taken into custody by the Cuyahoga County sheriff's staff within 24 hours of discharge and returned to the Cuyahoga County jail and held without bond until further order of this court.

Journal Entry No.146340827 (May 9, 2023).

{¶4} On September 7, 2023, Hinzman was before the trial court again for a probation violation and did not waive his right to a hearing. On September 12, 2023, the trial court reviewed the allegations of the violation and found probable

cause of the violation. During this hearing, Hinzman's probation officer, Shannon Turner ("Turner"), stated that Hinzman was transported to the CBCF and assessed for programming, as ordered by the trial court on May 9, 2023. Tr. 87. Turner stated that Hinzman obtained seven violations and had some struggles following the rules. Hinzman sometime showed aggression and was disrespectful to the staff, case manager, and probation officer. Hinzman served 101 days in the program and was unsuccessfully discharged from the CBCF due to being in possession of smoking contraband. The staff described seeing Hinzman on video smoking.

**{¶5}** Hinzman's trial counsel objected to any finding of probable cause. However, based on the summary from CBCF, the trial court found probable cause and found enough evidence to go forward with a hearing, which was set for September 21, 2023.

**{¶6}** At the September 21, 2023 hearing, the trial court asked Hinzman if he wished to admit to the violations contained in the CBCF report. Hinzman denied the allegations against him and wanted to go forward with the hearing. Turner testified that Hinzman negatively adjusted to the facility and rules. According to the CBCF report, Hinzman obtained seven violations and struggled with following the rules. He showed aggression at times and was disrespectful to the staff, his case manager, and Turner. On August 25, 2023, Hinzman was unsuccessfully discharged from the program for being in possession of and smoking contraband.

**{¶7}** After the trial court reviewing Hinzman's history of probation violations, the court called Cierra English ("English"), Hinzman's case manager, to testify. English read the placement summary report that she wrote, stating that "Hinzman was in violation of the OHI policy regarding smoking contrabands." Tr. 102. English also read that Hinzman never took accountability for any of the seven violations he received, which were for smoking and possession of contraband. English stated that Hinzman threw wild fits of anger and profanity in the hallways and would have his grandmother call the facility multiple times a day. English testified that Hinzman would continuously minimize his wrongdoings every time he was written up for violations. Hinzman was difficult and required multiple interventions concerning his disruptive and rude behavior.

**{¶8}** English continued reading her report into the record, stating that Hinzman stated on multiple occasions that he did not deserve to be at CBCF and that his prior caseworker was to blame. According to English, when Hinzman was terminated from CBCF, he went to English's door and verbally insulted her and blamed her for his termination. Hinzman told English that she was too overwhelmed to deal with him. English testified that Hinzman did not follow rules, was disrespectful to staff, and failed to attend programming as scheduled, always making excuses. English also stated that Hinzman completed Employment Readiness Workshop, Courthouse Navigation, Conflict Resolution, and Money Management. English further stated to the court that Hinzman's disruptive and

rude behaviors were caught on camera. Tr. 105. English testified that after Hinzman smoked contraband, he threw up on himself and appeared to be in an overdose state.

{¶9} After English's testimony, Dexter Todd ("Todd"), lead resident supervisor for CBCF, testified that he viewed video surveillance footage on the day that Hinzman was taken to the hospital. Todd testified that Hinzman rolled up a substance, lit it, and smoked it. After he finished smoking, Hinzman started convulsing and throwing up on himself. He passed out and ended up on the floor. Todd testified that as a result, Hinzman would not be allowed to be at CBCF for treatment purposes anymore.

{¶10} After Todd's testimony, the trial court questioned Hinzman's former case manager, Mr. Salaz ("Salaz"), who testified that Hinzman blamed him for going to CBCF. Salaz stated that Hinzman called him three times from CBCF, demanding that he make things right and get him out of CBCF. However, Salaz stated that prior to these instances, his interactions with Hinzman were positive.

{¶11} Salaz further testified that Hinzman wanted to transfer his probation supervision to the county where his grandmother resided. Salaz told Hinzman that he would need the court's permission. Salaz instructed Hinzman to bring verification of his treatment, a copy of his pay stub, and anything positive on his behalf to the hearing. However, Salaz stated that unbeknownst to him, Hinzman left the treatment facility on an Easter pass and never returned. Hinzman, without

permission, traveled from the facility to his grandmother's house, two hours away, and failed to report to this probation officer. The trial court responded that it is a big issue when somebody leaves treatment and cannot comply with the rules.

{¶12} At the conclusion of Salaz's testimony, Hinzman's trial counsel questioned Turner about their interactions. Turner testified that Hinzman called her after he was booked into the county jail for probation violations. Hinzman yelled at Turner and then hung up on her. Turner told Hinzman that she did not wish to speak to Hinzman anymore because she has never had anyone disrespect her the way Hinzman spoke to her. Turner also requested that she not continue to monitor him on his probation.

{¶13} Hinzman's trial counsel then questioned English about bringing the video surveillance of Hinzman smoking to court, to which she replied that she did not. She also testified that Hinzman had signs of smoking K2, synthetic marijuana, such as discolored fingertips that were dark brown or an orange, tan color.

{¶14} After the hearing, the trial court found Hinzman to be in violation of community control conditions and terminated it. The trial court stated its reasons as

> the probationer failed to complete drug treatment as instructed; and defendant was unsuccessfully discharged from CBCF for violating policy for contraband, smoking of contraband and assaultive and aggressive behavior towards staff and other patients.

Journal Entry No. 159326171 (Sept. 21, 2023).

**{¶15}** The trial court sentenced Hinzman to 17 months in prison and imposed up to two years of postrelease control at the discretion of the parole board. Hinzman was also given 363 days credit for time served. Hinzman filed this appeal, assigning three errors for our review:

1. The trial court denied appellant due process of law and violated Evid.R. 1002 by allowing the state to present witness testimony concerning events allegedly disclosed by a surveillance video where the surveillance video was available to the state, but it was not offered into evidence, and where none of the witnesses who testified about the surveillance video had personally observed the events allegedly depicted in the video;

2. The trial court abused its discretion and committed prejudicial error by finding appellant to be a probation violator; and

3. The trial court abused its discretion, denying appellant due process of law, and violated Crim.R. 32.1 by refusing to allow appellant's grandmother to testify/address the court at the hearing/sentencing.

## II. Probation Revocation Hearing – Evid.R. 1002 Violation

**{¶16}** In Hinzman's first assignment of error, he argues that the trial court erred and violated his dues process rights by allowing testimony where the witnesses referred to a surveillance video but did not offer the video into evidence. Hinzman cites Evid.R. 1002 to support his contention, which states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

**{¶17}** However, "Evid.R. 101(C)(3) expressly provides that the rules of evidence do not apply to proceedings revoking probation." *State v. Reese,* 2020-Ohio-4747, ¶ 17 (8th Dist.). "'Probation-revocation hearings are not subject to the rules of evidence and thus allow for the admission of [otherwise inadmissible] evidence.'" *Id.,* quoting *State v. Ohly,* 2006-Ohio-2353, ¶ 21 (6th Dist.). "'The rules of evidence, including hearsay rules, are expressly inapplicable to a revocation hearing.'" *Id.,* quoting *State v. Gullet,* 2006-Ohio-6564, ¶ 27 (5th Dist.), citing Evid.R. 101(C)(3).

**{¶18}** "'The rationale for this exception is that a trial court should be able to consider any reliable and relevant evidence indicating whether the probationer has violated the terms of probation, since a probation or community control revocation hearing is an informal proceeding, not a criminal trial.'" *Gullet,* citing *Columbus v. Bickel,* 77 Ohio App.3d 26, 36 (10th Dist. 1991).

**{¶19}** The testimony reflects that Hinzman smoked a banned substance, got sick, and was rushed to the hospital. Todd testified that he reviewed the video footage and observed Hinzman "looking out the door trying to see if any staff member was present or coming around." Tr. 107. Todd testified that Hinzman "would go sit back in his bed and he rolled the substance up. And while he was sitting on his bed, he lit and smoked. Pretty much almost immediately, maybe ten to 15 seconds later, he started convulsing and throwing up on himself." *Id.*

{¶20} Given the testimonies of English, Todd, and Turner, the trial court found Hinzman to be a probation violator. The trial court was not bound by Evid.R. 1002.

{¶21} Therefore, Hinzman's first assignment of error is overruled.

## III. Probation Revocation Hearing – Prejudicial Error

{¶22} In Hinzman's second assignment of error, he contends that the trial court committed prejudicial error and abused its discretion by finding him to be a probation violator and terminating his community control sanctions from smoking contraband. Hinzman argues that the state did not offer any evidence to prove the substance was synthetic marijuana. "We review a trial court's decision to terminate a defendant's community-control sanctions for an abuse of discretion. *State v. Malfregeot*, 2024-Ohio-257, ¶ 6 (8th Dist.), citing *State v. Kusinko*, 2023-Ohio-4545, ¶ 9 (8th Dist.). "An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Id.*, citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶23} "To support a finding for revocation of probation, the allegations need not be proven beyond a reasonable doubt but, rather, must only be based upon 'evidence of a substantial nature showing that revocation is justified.'" *Ohly*, 2006-Ohio-2353, at ¶ 18 (6th Dist.), quoting *State v. Bland,* 1997 Ohio App. LEXIS 572 (6th Dist. Feb. 21, 1997), citing *State v. Cowles,* 1995 Ohio App. LEXIS 2425 (6th Dist. June 16, 1995).

**{¶24}** The state needed only to provide substantial evidence that Hinzman smoked contraband. "Substantial evidence is considered to consist of more than a mere scintilla of evidence, but somewhat less than a preponderance." *Id.*, citing *State v. Gomez,* 1994 Ohio App. LEXIS 613 (11th Dist. Feb. 18, 1994), citing *Laws v. Celebrezze,* 368 F.2d 640, 642, (4th Cir. 1966), and *Marker v. Finch* 322 F.Supp. 905, 910, fn 7. (1971).

**{¶25}** "'The privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege.'" *Id.* at ¶ 19, quoting *State v. Bell,* 66 Ohio App.3d 52, 57 (5th Dist. 1990). "Determination of the credibility of the witnesses is for the trier of fact." *Id.*, citing *State v. Swiger*, 5 Ohio St.2d 151, 156, (1966). "A trial court's decision revoking probation will not be reversed absent a showing of abuse of discretion." *Id.,* quoting *State v. Scott*, 2005-Ohio-4873, ¶ 24 (6th Dist.).

**{¶26}** Hinzman has not demonstrated how the trial court abused its discretion revoking his community control given that there was substantial evidence presented from the testimonies at trial that he smoked contraband.

**{¶27}** Therefore, Hinzman's second assignment of error is overruled.

## IV.   Probation Revocation Hearing - Prejudicial Error

**{¶28}** In Hinzman's third assignment of error, he argues that the trial court denied him due process of law by refusing to allow his grandmother to testify at

the hearing. Hinzman's due process rights that shall be observed at the probation revocation hearing are as follows:

> "'(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . . ; (e) a 'neutral and detached' hearing body . . . ; and, (f) a written statement by the factfinders as to the evidence relied upon and reasons for revoking [probation or] parole . . . .'"

*Reese*, 2020-Ohio-4747, ¶ 15, quoting *State v. Hylton*, 75 Ohio App.3d 778 (4th Dist. 1991), quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756 (1973). *See also State v. Lofton*, 2008-Ohio-3015 (8th Dist.).

{¶29} In further support of his contention, Hinzman also cited Crim.R. 32.1, which provide, in part: "At the time of imposing sentence, the court shall afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The record reflects that the trial court questioned numerous times if Hinzman wanted to testify on his own behalf or speak to the court. Hinzman testified at the hearing before the trial court, and the court determined that he violated the conditions of his community control sanctions. Hinzman also spoke to the court during the mitigation phase of sentencing.

{¶30} Hinzman's trial counsel informed the court that Hinzman's grandmother was in the court and had been in constant contact with him and the

court. Hinzman's grandmother was not presented to the court as a witness on behalf of Hinzman. During the sentencing mitigation phase of the hearing, Hinzman's trial counsel stated: "Your Honor, would you —." Tr. 155. To which the trial court responded: "No. It's Mr. Hinzman's sentencing. It's not his grandmother's sentencing." *Id.*

{¶31} Hinzman has not demonstrated that his due process rights were violated by the trial court refusing to have his grandmother speak. The record supports his violations of his community control sanction, and the trial court sentenced him for that violation. *See State v. Pempton*, 2002-Ohio-5831, ¶ 26 (8th Dist.) (finding the trial court had discretion to not allow defendant's family members to speak at sentencing).

> According to R.C. 2929.19(A), any person other than the offender, counsel, or the victim, or the victim's representative, may present information relevant to the sentence only upon approval of the court. It is therefore within the court's discretion to permit the testimony of defense witnesses.

*State v. Maynard*, 2015-Ohio-1744, ¶ 6 (8th Dist.).

{¶32} Therefore, Hinzman's third assignment of error is overruled.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, P.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR